UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ROBERT HAMMOND | ) | |
| 707 Upham Place NW | ) | |
| Vienna, VA 22180, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. _____ |
| | ) | |
| U.S. DEPARTMENT OF DEFENSE | ) | |
| 1400 Defense Pentagon | ) | |
| Washington, D.C. 20301-1400, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| U.S. DEFENSE HEALTH AGENCY | ) | |
| 7700 Arlington Boulevard, Suite 5101 | ) | |
| Falls Church, VA 22042-5101 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| WALTER REED NATIONAL MILITARY | ) | |
| MEDICAL CENTER | ) | |
| 8901 Wisconsin Avenue, Building 1, Deck 2 (2nd Floor), | ) | |
| Room #2430 | ) | |
| Bethesda, MD 20889-5660 | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## COMPLAINT

### Preliminary Statement

1.      Through this action, brought under the Freedom of Information Act ("FOIA"), 5

U.S.C. §§ 552, *et seq., as amended*, and the Privacy Act ("PA"), 5 U.S.C. §§ 552a, *et seq., as*

*amended*, (collectively "FOIA/PA"), Plaintiff, Robert Hammond ("Hammond"), appeals the Defendant's, the United States Defense Health Agency ("DHA"), (1) failure to provide Hammond with full and complete FOIA/PA responses to numerous FOIA/PA requests, (2) improper withholding of responsive documents or segregable portions thereof, and (3) DHA's failure to adhere to the strictures of FOIA/PA and the Department of Defense's implementing regulations. This judicial appeal is timely as DHA, as the appellate authority for Defendant Walter Reed National Military Medical Center ("WRNMMC"), has denied (the "Denials") Hammond's timely-filed administrative appeals (the "Appeals") of DHA's FOIA/PA request responses (the "Responses") or failed to otherwise properly respond to Hammond's FOIA/PA requests (the "Requests").

2.      This Complaint has its genesis in Hammond's repeated attempts to obtain information from WRNMMC regarding custody of his medical records and WRNMMC's FOIA/PA processing procedures. WRNMMC is a component of Defendant Department of Defense ("DoD" or "Department"), and as of October 1, 2013, overseen by the Defendant DHA (collectively, "Agencies"). Prior to this date, WRNMMC was overseen by the Department of the Navy.

3.      In 2013 and 2014, Hammond requested copies of his medical records and other information via FOIA/PA and, upon receipt thereof, found that such records were incomplete and/or did not include information relating to a transfer of custody of such records. Other FOIA/PA requests were not answered at all.

4.      Thereafter, Hammond sought to understand and document the Agencies' FOIA/PA procedures, so as to ascertain why such information was omitted from the records provided by WRNMMC, why some requests were not answered and the veracity of statements made by

WRNMMC (including statements made to an appellate authority). Given that several of Hammond's Requests were submitted in order to ascertain the "working law" of the Agencies, and to determine whether the Agencies were acting lawfully in carrying out their duties under FOIA/PA, there is a substantial public interest in the documents at issue.

5.      Hammond timely filed his Appeals of the Responses to his Requests.  DHA has aggregated nine Appeals for nine unrelated FOIA/PA Requests, ostensibly for the purpose of judicial economy.   This Complaint addresses those nine Hammond FOIA/PA requests to WRNMMC in DHA's Aggregated Final Determination Letter (the "Final Determination"). *See* Exhibit 1, Final Determination.

6.      FOIA requires federal agencies to respond to public requests for documents, including the search and production of files maintained electronically, in order to increase public understanding of the workings of government and access to government information.  FOIA requires agencies to respond to such requests (and to timely-filed appeals) within twenty (20) working days. 5 U.S.C. §§ 552(a)(6)(A)(i)-(ii).  DoD, which oversees Defendants DHA and WRNMMC, has promulgated regulations to this effect. *See generally* DoD 5400.7-R, "DoD Freedom of Information Act Program," September 4, 1998, *as amended*.

7.      FOIA/PA also requires each agency to "establish a system to assign an individualized tracking number for each request received that will take longer than ten days to process and provide to each person making a request the tracking number assigned to the request." 5 U.S.C. §§ 552(a)(7)(A).

8.      DoD has issued a regulation to implement the Privacy Act, which among other things, delineates requirements for protecting personal information, including establish appropriate administrative, technical and physical safeguards. *See generally* DoD 5400.11-R, DoD

Privacy Program, May 14, 2007; *see also* DEPARTMENT OF JUSTICE, *Handbook for Agency Annual Freedom of Information Act Reports*, "Disposition of FIOA Requests," at 20 (available at http://www.justice.gov/sites/default/files/oip/pages/attachments/2014/11/04/department_of_justice_handbook_for_agency_annual_freedom_of_information_act_reports.pdf) ("Annual FOIA Report Handbook").

9.      Similarly, DoD has required DHA to "[e]stablish policies and procedures for the control and retention of medical records." DoD Directive 6040.41, "Medical Records Retention and Coding at Military Treatment Facilities," at 4.2.2.3. The Department has further clarified that such procedures at all military treatment facilities ("MTFs") must include a medical records control process which encompasses procedures "to store, verify, and locate medical records." DoD Instruction 6040.43, "Custody and Control of Outpatient Medical Records," at 5.1.1. While some of Hammond's records at issue here were inpatient records, they would still have been subject to DHA and WRNMMC's "policies and procedures for the control and retention of medical records." DoD Directive 6040.41.

10.     In responding to Hammond's Requests, the Agencies have improperly withheld agency records, or segregable portions thereof, that are responsive, known to exist, in the Agencies' possession, and required to be released under FOIA/PA.

11.     The Agencies' actions in this regard are also inconsistent with Executive Office Policy on FOIA compliance issued by President Barack Obama on January 21, 2009. The Executive Memorandum states:

> The Freedom of Information Act should be administered with clear presumption: In the face of doubt, openness prevails. The Government should not keep information confidential merely because public officials might be embarrassed by disclosure, because errors and failure might be revealed, or because of speculative or abstract fears. … All agencies should adopt a presumption in favor

4

of disclosure, in order to renew their commitment to the principles embodied in FOIA, and to usher in a new era of open Government. The presumption of disclosure should be applied to all decisions involving FOIA.

12.     Finally, the Agencies' decision to withhold WRNMMC records (*e.g.*, WRNMMC's Annual FOIA Report) is inconsistent with DoD's regulations implementing FOIA/PA, rendering their decisions "arbitrary, capricious, or otherwise not in accordance with law." 5 U.S.C. § 706.

### Jurisdiction

13.     This Court has both subject matter jurisdiction over this action and personal jurisdiction over the Defendants pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

### Venue

14.     Venue is appropriate under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391.

### Parties

15.     Plaintiff is a private individual who resides at 707 Upham Place N.W., Vienna, VA 22180.

16.     Defendant DoD is a Department of the Executive Branch of the United States Government and is an "agency" within the meaning of 5 U.S.C. § 552(f)(1). Defendants DHA and WRNMMC are components of DoD.  DoD, or one of its components, is in possession and/or control of the records requested by Hammond, which are the subject of this action.

### Factual Allegations

17.     Under federal law, the definition of "records" includes "all books, papers, maps, photographs, machine readable materials, or other documentary materials, regardless of physical form or characteristics, made *or received* by an agency of the United States Government under Federal law or in connection with the transaction of public business and preserved or appropriate

for preservation by that agency or its legitimate successor as evidence of the organization, functions, policies, decisions, procedures, operations, or other activities of the Government or because of the informational value of data in them." 44 U.S.C. § 3301 (emphasis supplied).

18.     36 C.F.R. § 1223.2 defines "Legal and financial rights records" as "that type of vital records essential to protect the legal and financial rights of the Government and of the individuals directly affected by its activities."

19.     The Department of Navy FY 2013 Annual FOIA Report submission to the DoD includes an attachment of "Subcomponent/Component or Agency" stating that WRMMMC was included in the Department of Navy FOIA Report submission to DoD as a subcomponent of Navy Bureau of Medicine and Surgery ("BUMED"). Ex. 2, Department of Navy FY 2013 FOIA Report – Subcomponents.

20.     On or about April 1, 2014, Hammond submitted a FOIA request to the Navy BUMED, seeking to discover the operational procedures of WRNMMC and the accuracy of WRNMMC FOIA reporting to the Department of Justice and the United States Congress by via the Fiscal Year ("FY") 2013 Annual FOIA Report submission for WRNMMC. *See* Ex. 3, Appeal – WRNMMC FY 2013 Annual FOIA Report Submission, at 20.

21.     Shortly thereafter, on or about April 11, 2014, Hammond sent another request to BUMED seeking to discover the operational procedures of WRNMMC and the accuracy of Privacy Act reporting to Congress by via the WRNMMC FY 2013 Quarterly Privacy Act Report submissions. Ex. 4, Appeal – WRNMMC FY 2013 Quarterly Privacy Act Reports, at 22.

22.     On or about April 15, 2014, BUMED referred these Requests to WRNMMC.  *Id*. at 19.

23.     Hammond submitted a follow-up email regarding both Requests to Ms. Judy Bizzell of the WRNMMC FOIA Office on or about April 24, 2014. *Id.*

24.     On or about April 26, 2014, in order to discover the operational procedures of WRNMMC under FOIA, Hammond submitted a request seeking the official tracking numbers assigned to his FOIA requests from February 26, 2013 through January 17, 2014, including the dates on which such requests were received by WRNMMC. Hammond identified such prior requests in an attachment to the April 26, 2014 request. *See* Ex. 5, Appeal – WRNMMC Hammond Request Tracking Numbers, at 13-16.

25.     On May 6, 2014, Hammond submitted another FOIA request intended to reveal the operational procedures of WRNMMC.  His May 6, 2014 Request sought records identifying the Reporting Chains for WRNMMC's FY 2013 and FY 2014 Annual FOIA Reports and FY 2013 and FY 2014 Quarterly Privacy Act Reports. Ex. 6, Appeal – WRNMMC FOIA and Privacy Act Reporting Chains (FY 2013 and FY 2014) at 7.

26.     Meanwhile, having received no response from WRNMMC regarding the FY 2013 Quarterly Privacy Act Reports Request within the 20-day statutory deadline, Hammond submitted an appeal of the Privacy Act Report Request on or about May 27, 2014. *See* Ex. 4, at 14.

27.      In his Appeal of the FY 2013 Quarterly Privacy Act Reports Request (and in all subsequent appeals), Hammond noted that his appeal of that particular FOIA Request was distinct and should not be combined with other appeals. *Id.*, at 2.

28.     After having received no response from WRNMMC regarding the WRNMMC FY 2013 Annual FOIA Report Request within the 20-day statutory deadline, Hammond submitted a separate appeal of the FY 2013 Annual FOIA Report Submission Request on or about May 27, 2014. Ex. 3, at 14.

29.     Having received no response from WRNMMC regarding his request for WRNMMC's FOIA Case Tracking Numbers within the 20-day statutory deadline, Hammond submitted an appeal of that Request on or about May 31, 2014. Ex. 5, at 23.

30.     DHA responded by letter on June 6, apparently seeking clarification regarding the following unrelated Requests:

   a.  WRNMMC FOIA Case Tracking Numbers [from February 26, 2013 through January 17, 2014];
   b.  WRNMMC FY 2013 and FY 2014 FOIA and Privacy Act Reporting Chains (which Hammond had not yet appealed at that time);
   c.  WRNMMC FY 2013 Quarterly Privacy Act Report, and;
   d.  WRNMMC FY 2013 Annual FOIA Report Submission.

In addition to seeking clarification regarding the foregoing, the June 6, 2014 Response summarized DHA's understanding thereof. Ex. 7, DHA Response – June 6, 2014.

31.     In the June 6, 2014, Response, in lieu of issuing any final appellate determinations for these Requests, DHA informed Hammond that the "appropriate appellate remedy" for his administrative appeal was to forward DHA's June 6 Response to the DHA Privacy and Civil Liberties Office "so that they may address your requests for information, assign a tracking number, and provide responsive records." *Id*. at 2.

32.     On June 30, 2014, Hammond responded to DHA's June 6, 2014 letter, addressing the questions raised by DHA, clarifying certain points and correcting factual inaccuracies contained in DHA's response. Ex. 8, Hammond Response – June 30, 2014.

33.     Specifically, Hammond informed DHA that WRNMMC had not provided its FY 2013 Annual Report or responded to that request in any way, and the supposed "WRNMMC FY 2013 Annual FOIA Report" which it had included in the June 6, 2014 Response was not the "WRNMMC FY 2013 Annual FOIA Report" but was, in fact, a list of Hammond's FY 2013 FOIA

8

requests to WRNMMC, which Hammond had himself provided as an enclosure in his May 27, 2014 Appeal of his separate Request for WRNMMC FOIA Case Tracking Numbers. Ex. 8, at 2.

34.     Hammond also pointed out that the "Requester CTRL" numbers referenced in DHA's June 6, 2014 Response were actually the numbers that Hammond had himself assigned to the Requests for his own organizational purposes, and not the official Agency tracking numbers thereof. *Id*.

35.     Hammond further stated his belief that the DHA appellate authority's statement that he must forward his requests to DHA's Privacy and Civil Liberties Office was not in accordance with the relevant governing laws, regulations and policies. *Id*.

36.     Hammond further requested that DHA appellate authority issue final determinations on his separate, open appeals and noted that the appeals remained open, pending such final determinations. *Id*.

37.     Notwithstanding Hammond's efforts to resolve the evident misunderstanding, on August 19, 2014, WRNMMC responded by email, aggregating multiple unrelated FOIA requests and denying Hammond access to the WRNMMC FY 2013 Annual FOIA report, claiming that it was pre-decisional and therefore exempt from disclosure under 5 U.S.C. § 552(b)(5) ("Exemption 5"). Ex. 9, WRNMMC Response – August 19, 2014.

38.     On September 15, 2014, Hammond submitted an appeal of the WRNMMC FY 2013 Annual FOIA Report Request. Ex. 3.

39.     On September 18, 2014, Hammond supplemented his appeal of DHA's determination regarding the WRNMMC FY 2013 Annual FOIA Report Submission, noting that Department of Justice Guidelines state that Exemption 5 "is inapplicable to purely factual matters, or to factual portions of otherwise deliberative memoranda." Ex. 10, Hammond Email Thread –

September 20, 2014, at 1; *see also Department of Justice Freedom of Information Act Guide, May 2004*, "Exemption B5, Deliberative Process Privilege," at ¶16 (available at http://www.justice.gov/oip/foia-guide-2004-edition-exemption-5).

40.     On September 20, 2014 Hammond provided further information regarding his appeal, nothing that he was finding other agency Annual FOIA Report submissions to their higher headquarters posted on public websites. Ex. 10, at 1.

41.     Department of Justice requirements state that for each Fiscal Year agencies must: "Post both the open format NIEM-XML and human-readable versions of their Annual FOIA Reports on their websites, and provide the links to OIP for aggregation on the Department's website." *See* Annual FOIA Report Handbook, "PROCESS FOR Annual FOIA Report Completion," at 3.

42.     DHA did not address all elements of Hammond's September 15 Appeal, but nevertheless denied said Appeal, citing Exemption 5. Ex. 1, Final Determination, at 1.

43.     Following the Denial, Hammond submitted a FOIA request to DHA for their FY 2014 Annual FOIA Report submission to their higher headquarters. Ex. 11, FOIA Request – DHA Fiscal Year 2014 Annual FOIA Report (Hammond's DHA 14-D).

44.     In submitting the DHA FY 2014 Annual FOIA Report Request, Hammond was seeking to determine the operational procedures of DHA and whether DHA was lawfully carrying out its duties under FOIA/PA with respect to DHA's denial of Hammond's FOIA request for the WRNMMC FY 2013 Annual FOIA Report Request.

45.     Via email on April 29, 2015 and May 10, 2015, Hammond followed up on his Request for the DHA Fiscal Year 2014 Annual FOIA Report submission. Ex. 12, DHA Fiscal Year 2014 Annual FOIA Report – Correspondence and Reply, at 1-2.

46.    On May 11, 2015, having denied Hammond's nearly identical request for the WRNMMC FY 2013 Annual FOIA report submission to their next higher headquarters as exempt under 5 U.S.C. § 552(b)(5),  Ms. Doritha N. Ross, Senior FOIA Analyst, DHA Privacy & Civil Liberties Office, released the DHA FY 2014 Annual FOIA report that DHA submitted to Department of Defense. Ex. 12, at 1; *see also* Ex. 13, DHA FY 2014 Annual FOIA Report Submission.

47.    Meanwhile, also on August 19, 2014, WRNMMC responded by email, aggregating several unrelated FOIA requests and denying Hammond access to the WRNMMC FY 2013 Quarterly Privacy Act Reports. WRNMMC claimed that it was pre-decisional and therefore exempt from disclosure under 5 U.S.C. § 552(b)(5). Ex. 4, at 24.

48.    Hammond submitted an appeal of DHA's denial of his FOIA Request for the WRNMMC FY 2013 Quarterly Privacy Act Reports on September 18, 2014. *Id*.

49.    In his appeal of his FOIA Request for the WRNMMC FY 2013 Privacy Act Reports, Hammond provided a link for past DOD Privacy Act reports, showing them to be a factual, statistical reporting of antecedent events. Ex. 4, Appeal – FY 2013 WRNMMC Quarterly Privacy Act Reports, at 2. The link has since changed to http://dpcld.defense.gov/Reports.aspx.

50.    DHA denied the appeal under the deliberative process exemption, 5 U.S.C. § 552(b)(5). Ex. 1.  However, as noted with regards to other of Hammond's Appeals, DHA's Final Determination declined to address all elements of the appeal for the WRNMMC FY 2013 Quarterly Privacy Act Reports.

51.    On August 19, 2014, WRNMMC responded by email to Hammond's request for the WRNMMC FY 2013 and FY 2014 reporting chain(s) of command for the Annual FOIA Report submissions and the Quarterly Privacy Report submissions. Rather than releasing responsive

records or providing a permissible reason for withholding them, WRNMMC provided a narrative response stating that, "The Annual Reports from this office are received by: Defense Health Agency". Ex. 6, at 12.

52.     DHA did not exist in Fiscal Year 2013, which ended on September 30, 2013. Per DHA's own website, "[o]n October 1, 2013, the Department of Defense established the Defense Health Agency (DHA) to manage the activities of the Military Health System." *See* DHA website, *available at* http://www.tricare.mil/tma/.

53.     Hammond appealed the WRNMMC reply regarding his Request for the WRNMMC FY 2013 and FY 2014 Reporting Chains, on the grounds that, *inter alia*, the narrative response was inaccurate (in that DHA had not been established in FY 2013), the request had not been asked and answered, and WRNMMC had had failed to release responsive records. Ex. 3, Appeal – WRNMMC FY 2013 Annual FOIA Report Submission.

54.     DHA denied the appeal without addressing all of the elements of the appeal, (including Hammond's request for the WRNMMC FY 2013 reporting chains of command which existed prior to the establishment of DHA) or identifying a statutory basis or permissible reason for denial, stating only that, "the WRNMMC FOIA office provided their superior office at the Defense Health Agency as *an* appropriate reporting chain. An appeal of this response is denied." Ex. 1, Final Determination at 1 (emphasis added).

55.     Meanwhile, on July 24, 2014, WRNMMC responded by email to Hammond's Request for FOIA Case Tracking Numbers, stating it had found no records thereof, and incorrectly inferring that WRNMMC had provided agency case tracking numbers for Requests where it had not done so.  Ex. 5, at 18.

56.     Hammond appealed the WRNMMC reply to his Request for FOIA Case Tracking Numbers on September 14, 2014. This appeal, *inter alia*:

    a.  Noted that Agencies are required by the FOIA to assign an individualized tracking number for each request received that will take longer than ten days to process;

    b.  Identified the date that each request was sent to WRNMMC by certified mail, email and/or (confirmed) fax;

    c.  Sought the dates that WRNMMC recorded receipt of each request in their records;

    d.  Provided complete documentation of every WRNMMC reply, along with WRNMMC's Agency-assigned tracking numbers, where available;

    e.  Identified those WRNMMC replies that were vague or inaccurate in stating which of Hammond's requests the WRNMMC reply applied to;

    f.  Corrected inaccurate assertions in the WRNMMC reply; and

    g.  Identified specific WRNMMC records that would be among those responsive to his request (such as the Agency FOIA case tracking log).

Ex. 5, Appeal – Hammond Request Tracking Numbers.

57.     On or about May 25, 2014, Hammond again sought to discover the operational procedures of WRNMMC by submitting a FOIA request for the official tracking numbers of certain other of his FOIA requests from April 26, 2014 through May 6, 2014. Hammond identified such other requests in an attachment to his May 25 Request.  The May 25, 2014, Request also sought the dates that WRNMMC recorded receiving the requests at issue therein. Ex. 14, Appeal – WRNMMC Hammond FOIA Tracking Numbers and Status #14-B through U, at 6-7 (Hammond's #14-V).

58.     On July 25, 2014, in an interim email reply to Hammond's Request #14-V (that once again aggregated multiple unrelated FOIA requests), WRNMMC responded "in part;" identifying case tracking numbers for only a few requests, but without providing records of the dates such requests were received by WRNMMC. Ex. 14, at 12.

59.     On August 19, 2014 WRNMMC responded to Hammond's Request #14-V, indicating that the request had been asked and answered. Ex. 14, at 10.

60.     Hammond appealed the WRNMMC reply, by, *inter alia*:

  a. Disputing that the request had been asked and answered;
  b. Identifying the dates that Hammond had sent his Requests #14-B – U (for which he was seeking Agency tracking numbers) to Ms. Judy Bizzell of the WRNMMC FOIA Office by email;
  c. Seeking the dates that WRNMMC recorded receipt of each request; and
  d. Identifying the WRNMMC agency FOIA case tracking log (or other similarly-named record) as being among those records that would be responsive to his Request #14-V.

Ex. 14, at 1-2.

61.     Concurrently, but separately, on April 26, 2014, Hammond submitted a FOIA request seeking records of the chain of custody of an original DVD of his medical records used by Ms. Judy Logeman, the WRNMMC Healthcare Resolutions Specialist, for reconciling which records that WRNMMC had in its possession and had not released to Hammond pursuant to his prior PA requests to WRNMMC Medical Records Office.

62.     In this request, Hammond was seeking to discover (a) the operational procedures of WRNMMC; (b) the facts surrounding the safeguarding, preservation, and current custody of the aforementioned DVD; and (c) the veracity of WRNMMC assertions to an appellate authority with respect to appeal of his 2013 FOIA Request #13-19 seeking a copy of the aforementioned DVD .

Ex. 15, Appeal – DVD Chain of Custody, August 24, 2014, at 5.

63.     Hammond's Request for the DVD Chain of Custody:

  a. Identified the DVD of his medical information by
    i. Image of the front label of the DVD;
    ii. Reference to a prior FOIA request; and
    iii. Reference to Hammond's appeal of such prior request;
  b. Reminded the WRNMMC FOIA office that the DVD contained his medical records, which is Personal Health Information ("PHI") protected by the Privacy Act and Health Insurance Portability Accountability Act

       ("HIPAA"), such that each disclosure or transfer of the record is required to be properly accounted for;

   c.  Documented the transfers that, based on assertions by WRNMMC, should have taken place, including transfers from the WRNMMC Healthcare Resolutions Office to the Medical Records Department (where medical records are required to be maintained under strict accountability and access/disclosure control) to the FOIA office, to personnel copying the DVD, back to the FOIA office, and to the mailing department in response to Hammond's FOIA request of June 29, 2013.

*Id.*

64.    Hammond had previously submitted a FOIA/PA request for a *copy* of the DVD of his medical records, noting that the original DVD is an agency record, as it was received by WRNMMC in connection with its operations, used in those operations, and was evidence of decisions regarding records that had and/or had not been released pursuant to his PA requests.

65.    In that FOIA/PA request, Hammond had also noted that WRNMMC was required to preserve the original DVD of his medical records used by Ms. Logeman in accordance with a National Archives and Records Administration ("NARA") approved records schedule for medical records. Upon receiving what he recognized as the original DVD from WRNMMC instead of a copy, Hammond appealed WRNMMC's response.

66.    As part of this appeal, Hammond noted that he had already mailed the original DVD back to WRNMMC by certified mail (tracking number 7012 1640 0000 9665 1035), with restricted delivery to Ms. Bizzell of the WRNMMC FOIA Office. Ex. 16, Appeal – Medical Records of DVD Containing PDF files of Records Received as of May 14, 2012, January 18, 2014.

67.    On July 25, 2014, WRNMMC replied to Hammond's Request for the DVD Chain of Custody by email, which included an undated and unsigned letter (again aggregating unrelated FOIA requests) stating "there is No Record for your request for a 'Disk Chain of Custody.'" Ex. 15, at 7.

15

68.     On August 24, 2014, Hammond appealed the WRNMMC denial of his Request for the DVD disk chain of custody, among other things noting that the DVD is an Agency Record and that, "The DVD is clearly labeled and known to by WRNMMC personnel to contain my [Hammond's] Personal Identifying Information and Personal [Protected] Health Information, protected by the Privacy Act at Health Insurance Portability Accountability Act, such that ech [sic] disclosure or transfer of the record is required to be properly accounted for." Ex. 15, at 2.

69.     Hammond's appeal went on to reiterate the transfers that should have taken place, including transfers to and from the WRNMMC Medical Records Department where medical records are required to be maintained under strict custody control.

70.     In its Final Determination, DHA denied Hammond's request without providing a statutory basis for denial or permissible reason for withholding records, stating, "[Hammond] made numerous FOIA requests related to the DVD, to include requests of tracking and chain of custody records… [WRNMMC staff] are not required to account for items [Hammond] risked putting into the mail system. Accordingly, each of [Hammond's] appeals related to accountability for the DVD are denied." Ex. 1, at 2.

71.     Meanwhile, on April 26, 2014, Hammond submitted a separate FOIA request (Hammond's #14-Q), seeking to discover, via images of the front of the aforementioned original DVD of his medical records and the copy that WRNMMC asserts was made from the original DVD.  As amended by his appeal, the request sought to discover:

    a.  The operational procedures of WRNMMC regarding custody of records;
    b.  Which, if any, DVDs containing Hammond's medical records are in WRNMMC's custody;
    c.  Whether there was a loss or compromise of protected Privacy Act information contained on the aforementioned original DVD of his medical records;
    d.  Whether there was interference with USPS mail delivery related to the original DVD;

16

    e.   Whether there was an unauthorized removal by WRNMMC personnel of an official Agency record (*i.e.*, the original DVD), and;

    f.   The veracity of assertions WRNMMC made to an appellate authority related to Hammond's prior FOIA requests for a copy of the said DVD.

Ex. 17, Appeal – DVD Disk Label Image, August 24, 2014, at 5 (Hammond's #14-Q).

72.     Hammond requested that each image be labeled as to whether it was an image of the original DVD or the copy that WRNMMC asserts was made from the original.

73.     In its July 25, 2014, email reply to Hammond's Request for the DVD disc label image, WRNMMC provided images of two discs. However, WRNMMC did not specify which image it asserts to be that of the original DVD used by the Resolutions Specialist (which it stated never left their custody), and which it asserts to be the copy that WRNMMC made from the original that WRNMMC allegedly mailed to Hammond. Ex. 17, at 9.

74.     Upon receiving the WRNMMC reply to his #14-Q Request, Hammond noted that one of the images could not have been made from a DVD in WRNMMC's custody at the time of his request.  Specifically, Hammond noted that WRNMMC had further annotated the label of that DVD (which Hammond asserts is the original DVD) by adding "FOIA #14-08" and "Hammond #13-03" prior to mailing it to Hammond. The image contained in Hammond's #14-08 was made from the DVD that he received in the mail from WRNMMC, such that no DVD exists without the additional annotations cited above.  *Id*. at 1-2.

75.     On August 23, 2014 Hammond appealed the WRNMMC response to his Request for the DVD disk images, on the grounds that, *inter alia*, WRNMMC "[did] not have a DVD in their custody at [that] time exactly matching the image provided in their response at Enclosure (2) containing only the annotations '*Medical Records for Judy HIPPA*' and '*Patient: Robert*

*Hammond*,'" and without the subsequent annotations, "*FOIA #14-08*" and "*Hammond #13-03*", "such that the image provided [by WRNMMC] [was] incorrect." Ex. 17, at 3.

76.     In its December 8, 2014, Final Determination, DHA denied Hammond's Request for DVD disk label images without addressing the basis for his appeal, and without providing a statutory basis for denial or other permissible reason for withholding records. DHA stated only that, "In a letter dated August 3 2014, you [Hammond] requested 'photocopies of the front side disk labels of both the original and the copy of the DVDs containing my medical records that are in WRNMMC FOIA Office custody and that each image be labeled as to whether it is the original that I provided or the copy made for the FOIA office.'" Ex. 1, at 2.

77.     As part of his efforts to determine what had happened to his medical records, on April 26, 2014, Hammond submitted a separate FOIA request for records of two packages that Hammond mailed by United States Postal Service (USPS) certified mail, to Ms. Judy Bizzell of the WRNMMC FOIA Office. One of said packages contained the aforementioned DVD of Hammond's medical records with Personally Identifiable Information ("PII"), and was, therefore, sent restricted delivery to Ms. Bizzell. Hammond was seeking to discover the handling and current custody of the packages and seeking to discover any reporting, investigations into potential violations of law or policy, or other actions taken by the WRNMMC Commander and/or Privacy Officer upon notification that the packages had not been received by Ms. Bizzell. *See* Ex. 18 Appeal – Certified Mail Tracking Numbers.

78.     USPS confirmed with Ms. Gully, the WRNMMC Mail Room Manager, that both packages were received by WRNMMC and released to Ms. Simpson, the WRNMMC FOIA Office mail orderly. *Id*. at 11.

79.     Ms. Bizzell stated repeatedly that she did not receive either certified package. *Id*. at 23, 31.

80.     The package denoted by tracking number 7012 1640 0000 9665 1035, as noted, was sent restricted delivery to Ms. Bizzell and contained the aforementioned DVD with Hammond's sensitive medical records and other sensitive Personally Identifiable Information ("PII"). Both packages contained PII. *Id*. at 1-2.

81.     Hammond had notified General Jeffrey B. Clark, Director, WRNMMC, of the missing USPS certified mail packages by letters on February 25, 2014, March 24, 2014 and April 17, 2014 that were faxed to his office and also sent by certified mail, making them Agency records. Hammond noted that one package contained a DVD of Hammond's medical records, such that there is a potential privacy breach if it is missing.

82.     Hammond's letters noted that there could be a potential issue with obstructing delivery of the packages to Ms. Bizzell. More alarmingly, Hammond pointed out that there was a potential violation of HIPAA and the Privacy Act if the WRNMMC FOIA Office had not followed proper procedure in removing the DVD of agency records containing Hammond's Protected Health Information ("PHI") and PII.  Hammond requested an inquiry into the missing certified packages. Ex. 18, at 14-18 (*i.e.*, Hammond's #14-I).

83.     Once received by WRNMMC, the above-referenced letters became Agency records that are required to be retained under a NARA General Records Schedule or a NARA-approved agency-specific records schedule. All correspondence to an agency commander in his/her official capacity is an agency record.

84.     On July 25, 2014, WRNMMC replied to Hammond's Request #14-I by email, which as previously noted, included an undated and unsigned letter aggregating unrelated FOIA

requests. In that email, WRNMMC stated that "[w]e find that (other than the emails you currently have), there is No Record for your request for further correspondences, emails, etc., regarding tracking numbers 7012 1640 0000 9665 1035 or 7012 1640 0000 9665 4524. This matter is closed in this office." Ex. 18, at 8.

85.     On August 16, 2015, Hammond appealed WRNMMC's denial of his Request #14-I for records relating to the certified packages. Ex. 18, at 1.

86.     The Final Determination denied Hammond's request without fully addressing all elements of the Appeal and without providing a statutory basis for denial or other permissible reason for withholding records, stating "you [Hammond] made numerous FOIA requests related to the DVD, to include requests of tracking and chain of custody records… They [WRNMMC] are not required to account for items you risked putting into the mail system. Accordingly, each of your appeals related to accountability for the DVD are denied." Ex. 1, at 2.

87.     The Office of Management and Budget ("OMB") defines a "breach" as follows: "[a] loss of control, compromise, unauthorized disclosure, unauthorized acquisition, unauthorized access, or any similar term referring to situations where persons other than authorized users and for an other than authorized purpose have access or potential access to personally identifiable information [PII], whether physical or electronic." OMB, "Safeguarding Against and Responding to the Breach of Personally Identifiable Information," at 1 n.5 (May 22, 2007), *available at* http://www.dod.gov/pubs/foi/privacy/docs/OMB_22May2007.pdf

88.     DoD prescribes policy for reporting breaches and notifying individuals of breaches of their PII, which incorporates OMB requirements:

> "The notification should be provided in writing and should be concise, conspicuous, and in plain language. The notice should include the following elements:

--a brief description of what happened, including the date( s) of the breach and of its discovery;

--to the extent possible, a description of the types of personal information involved in the breach (e.g., full name, Social Security Number, date of birth, home address, account number, disability code, etc.);

--a statement whether the information was encrypted or protected by other means if it is determined that such information would be beneficial and would not compromise the security of the system;

--what steps individuals should take to protect themselves from potential harm, if any;

--what the agency is doing to investigate the breach, to mitigate losses, and to protect against further breaches, and who affected individuals should contact at the agency for more information, including a phone number, either direct or toll-free, email address, and postal address. …

**New DoD Policy**: It shall be DoD Policy that notifications to individuals continue to comply with the requirement of DoD 5400.11-R and include the new elements provided in the new OMB requirements."

Office of the Secretary of Defense, "Safeguarding Against and Responding to the Breach of Personally Identifiable Information," at 12 (June 5, 2009) ("DoD PII Memo"); *available at* http://www.dod.gov/pubs/foi/privacy/docs/DA_M6_5_2009Responding_toBreach_of_PII.pdf.

89.     The contents of the certified packages exceed every element of PII, that DoD identifies as "high risk" (e.g. name, plus any of date of birth, SSN, medical records), thereby requiring breach reporting and notification to the person who's PII was breached. *See* Office of the Secretary of Defense Memorandum, Safeguarding and responding to the Breach of Personally Identifiable Information, June 5, 2009.

90.     Hammond has received no notification regarding breach of his PII in the certified packages, which Ms. Bizzell of the WRNMMC FOIA Office states that she did not receive.

91.     As part of his efforts to discover what had happened to the aforementioned certified packages, Hammond also submitted a FOIA request to the United States Postal Service ("USPS") on or about May 3, 2014 seeking their records of certified mail tracking numbers 7012 1640 0000

21

9665 1035 and 7012 1640 0000 9665 4524. Ex. 19, USPS FOIA Referral, May 10, 2015 at 4.  At the end of that proceeding, on April 20, 2015, USPS referred Hammond's request to WRNMMC for release of documents in their custody. *Id.*

92.     On May 10, 2015, Hammond followed up with WRNMMC regarding this referral (which remains unanswered at the time of this complaint), reiterating his prior requests for WRNMMC to preserve all responsive or potentially responsive records, including emails, correspondence, records of FOIA searches, etc. for FOIA requests related to the certified packages. Hammond also identified responsive/potentially responsive records as all records of any kind in any format including, but being not limited to: WRNMMC mail room records of receipt from USPS, transfer to the WRNMMC FOIA/PA Office mail room orderly, emails, letters, results of investigations, records of phone calls with USPS, etc.  Ex 19.

93.     On July 6, 2014, Hammond submitted a separate FOIA/PA request to secure copies of his medical records at Fairfax Health Center, which (like WNRNMMC) is a subordinate element of DHA. Ex. 20, Request – Fairfax Health Center Records (Hammond's #14-Z).

94.     On September 2, 2014, WRNMMC responded to Hammond's Request for Fairfax Health Center Records, stating, "There is no records of the documents you seek." Ex. 21, Response – Fairfax Health Center Records (also Hammond's #14-Z).

95.     Hammond had not filed an appeal of the WRNMMC reply, but DHA included it in its aggregated final determination letter, stating, "[i]n a letter dated July 6, 2014, you requested personal health records related to treatment at the Fairfax Health Center. The WRNMMC FOIA office provided your health records within their possession and control." Ex. 1, Final Determination, at 1¶2.

96.     DoD regulations require that its various component agencies forward misdirected FOIA/PA requests "to the DoD Component or other Federal Agency with the responsibility for the records requested." *See* Department of Defense Freedom of Information Act Program, September 1998, DoD Regulation DoD 5400.7-R.C5.2.7 *as amended*.

### COUNT I: Withholding Annual FOIA Reports
(Violation of the Freedom of Information Act)

97.     Plaintiff Hammond repeats and re-alleges paragraphs 1-96 as if set forth in full herein.

98.     Hammond's Request for the Annual FOIA Reports for FY 2013 and FY 2014 was plainly-formulated, and sought either specific information required to be released under FOIA and DoD's implementing regulations, or information regarding how DHA carries out its statutory duties under FOIA.

99.     The Agencies may not, consistent with the strictures of the Freedom of Information Act, *see* 5 U.S.C. §§ 552(e)(1), (e)(3), withhold their annual reports from the public, nor may the Agencies withhold the raw statistical data thereof. *See* 5 U.S.C. § 552(e)(3).

100.    Hammond has exhausted his administrative remedies, having timely filed his Appeal of his Request addressed herein, and having received an affirmative Denial of such Appeal. *See* 5 U.S.C. §§ 552(a)(6)(A)(ii), (6)(C).

### COUNT II: Withholding Quarterly Privacy Act Reports
(Violation of the Privacy Act)

101.    Plaintiff Hammond repeats and re-alleges paragraphs 1-100 as if set forth in full herein.

102.    Hammond's Request for WRNMMC's Quarterly Privacy Act Reports was plainly-formulated, and sought either specific information required to be released under the Privacy Act

and DoD's implementing regulations, or information regarding how DHA carries out its duties thereunder.

103.    The Agencies may not, consistent with the strictures of the Privacy Act, withhold their quarterly reports from the public, nor may the Agencies withhold the raw statistical data thereof.

104.    Notwithstanding that WRNMMC is subject to oversight by DHA, WRNMMC's submission of its Quarterly Privacy Act Reports is a "final agency action" for purposes of FOIA/PA exemption analysis.

105.    Additionally, if a supervising agency relies upon factual reports, analyses, data, memoranda, or other records in rendering a final decision or otherwise dealing with the public, a FOIA requester is entitled to receive such records.

106.    Therefore, DHA's reliance on the deliberative process privilege is entirely inappropriate in these circumstances, and the Agency must provide Hammond with the records he seeks.

107.    Hammond has exhausted his administrative remedies, having timely filed his Appeal of his Request addressed herein, and having received an affirmative Denial of such Appeal. *See* 5 U.S.C. §§ 552(a)(6)(A)(ii), (6)(C).

## COUNT III: Refusal to Assign Tracking Numbers
(Violation of the Freedom of Information Act)

108.    Plaintiff Hammond repeats and re-alleges paragraphs 1-107 as if set forth in full herein.

109.    Notwithstanding Deputy General Counsel Cygnarowicz's reluctance to "dictate how the office should designate [its] numbering system," Final Denial, at 1¶4, DHA may not

simply refuse to adopt, nor may it then refuse to apply, a uniform numbering system for the FOIA requests that it receives. *See* 5 U.S.C. § 552(a)(7)(A).

110.    The Agencies may not deviate from whatever numbering system(s) they adopt while remaining in compliance with FOIA.

111.    Using a requester's personal system for tracking his or her own FOIA requests by necessity constitutes a deviation from the Agencies' system(s).

112.    The Agencies' repeated refusal to provide Hammond with the "individualized tracking number for each request" that Hammond made, despite his attempts to obtain such information, is therefore in violation of the express provisions of FOIA.   *See* 5 U.S.C. § 552(a)(7)(A); Final Denial at 1¶4.

113.    Hammond has exhausted his administrative remedies, having timely filed his Appeal of his Request addressed herein, and having received an affirmative Denial of such Appeal. *See* 5 U.S.C. §§ 552(a)(6)(A)(ii), (6)(C).

## COUNT IV: Improper Withholding of Records
(Violation of the Freedom of Information Act)

114.    Plaintiff Hammond repeats and re-alleges paragraphs 1-113 as if set forth in full herein.

115.    DHA has failed to provide a complete response to Hammond's request for WRNMMC's Reporting Chains, as DHA did not exist for FY 2013.

116.    Further, a narrative response is inadequate when the FOIA request at issue is for documentation of an Agency's procedures and policy.

117.    The Agencies have provided no documents whatsoever in regards to Hammond's request for WRNMMC's reporting chain, offering only an incomplete, inadequate narrative response.

118.    DHA's failure to provide a legitimate basis and rationale for withholding responsive documents, or segregable portions thereof, is in violation of FOIA. *See* 5 U.S.C. § 552(a)(4)(B).

119.    Hammond has exhausted his administrative remedies, having timely filed his Appeal of his Request addressed herein, and having received an affirmative Denial of such Appeal. *See* 5 U.S.C. §§ 552(a)(6)(A)(ii), (6)(C).

## COUNT V: Failure to Respond
(Violation of the Freedom of Information Act)

120.    Plaintiff Hammond repeats and re-alleges paragraphs 1-119 as if set forth in full herein.

121.    Federal agencies may not simply refuse to respond to a properly-formulated FOIA request; even if a request is not properly formulated, an agency has an obligation to seek clarification from the requester. 5 U.S.C. 552(a)(6)(A)(ii)(I).

122.    Hammond submitted several properly-forumlated FOIA requests, to which DHA did not and has not responded.

123.    DHA's failure to fully and completely respond to Hammond's plainly stated Requests violates the express provisions of FOIA. *See* 5 U.S.C. § 552(a)(3).

124.    Hammond has constructively exhausted his administrative remedies, as DHA has not responded or otherwise made any determination within the statutory time limit, thereby denying him the opportunity to challenge any denial of these Requests.

## COUNT VI: Failure to Forward Requests
(Freedom of Information Act)

125.     Plaintiff Hammond repeats and re-alleges paragraphs 1-124 as if set forth fully herein.

126.     DHA is subject to the regulations promulgated by DoD to implement the FOIA.

127.     An agency's failure to follow the implementing regulations of the FOIA (whether its own or that of its supervising agency) is, by necessity, a violation of FOIA.

128.     DoD Regulations require a component which has received a request in error to forward such request to the appropriate component or outside Federal agency.  DoD Regulation DoD 5400.7-R.C5.2.7 *as amended*.

129.     DHA did not forward Hammond's Requests that it claimed had been misdirected; instead instructing Hammond to re-submit such requests to the appropriate alternate component or agency – in this case, to WRNMMC, which is itself a subcomponent of DHA.

130.     Moreover, DHA upheld WRNMMC's decision not to forward the allegedly misdirected Request to the identified alternate agency.

131.     Accordingly, DHA has failed to follow (and, indeed, has affirmatively contravened) the DoD regulations that implement the statutory mandates of the FOIA.

132.     Hammond has exhausted his administrative remedies, having timely filed his Appeal of his Requests addressed herein, and having received an affirmative Denial of such Appeal. *See* 5 U.S.C. §§ 552(a)(6)(A)(ii), (6)(C).

133.     In the alternative, Hammond has constructively exhausted his administrative remedies as to the Requests that, if misdirected, should have been forwarded to the appropriate

agency, since he has not received a determination on such Requests within the statutory time frame,

### COUNT VII: Failure to Report Potential Breach of Protected Information
(Violation of the Privacy Act)

134.    Plaintiff Hammond repeats and re-alleges paragraphs 1-133 as if set forth fully herein.

135.    A breach of Personally Identifiable Information ("PII") or Protected Health Information ("PHI") is defined by OMB as loss of control, compromise, unauthorized disclosure, unauthorized acquisition, unauthorized access or other similar term. *See* OMB, "Safeguarding Against and Responding to the Breach of Personally Identifiable Information," at 1 n.5 (May 22, 2007).

136.    WRNMMC incurred a breach of the DVD of Hammond's medical records both in WRNMMC mailing the DVD to Hammond and in loss of control of the certified package returning the DVD to WRNMMC custody.

137.    "High risk" breaches require external reporting. *See* Office of the Secretary of Defense Memorandum, Safeguarding and responding to the Breach of Personally Identifiable Information, June 5, 2009. WRNMMC did not report the breach of the DVD of Hammond's medical records.

138.    A breach requires notification to the individual whose PII has been breached, including notification as to what the agency is doing to investigate the breach, to mitigate losses, etc.  *See* Office of the Secretary of Defense Memorandum, Safeguarding and responding to the Breach of Personally Identifiable Information, June 5, 2009.

139.   WRNMMC failed to notify Hammond of the breach of the DVD of Hammond's medical records and of investigations or other actions taken.

140.   Upon information and belief, WRNMMC has not taken action to investigate the breach, determine the outcome of the breached records, or to mitigate loss of the records.

**COUNT VIII: Violation of the Administrative Procedure Act**

141.   Plaintiff Hammond repeats and re-alleges paragraphs 1-140 as if set forth fully herein.

142.   The Administrative Procedure Act prohibits agencies from acting in a manner which is "arbitrary, capricious, or otherwise not in accordance with law." *See* 5 U.S.C. § 706(2)(A), or "without observance of procedure required by law." *See* 5 U.S.C. § 706(2)(D).

143.   An agency's failure to abide by its own controlling regulations is, by definition, arbitrary and capricious.

144.   DHA's instruction that Hammond submit a request for records to a separate DoD Component, DoD facility, or separate Federal Agency does not qualify as "forwarding" Hammond's request.

145.   Similarly, refusal to assign a tracking number in accordance with a unified system ignores the "procedure required by law." *See* 5 U.S.C. § 552(a)(7)(A); Final Determination at 1¶4.

146.   Accordingly, DHA has violated both its controlling regulations and the statutory requirements of FOIA, rendering its actions arbitrary, capricious, and not in accordance with the law.

## Relief Requested

WHEREFORE, Plaintiff, Hammond, prays that this Court:

(1)     Maintain jurisdiction over this action until the Agencies are in compliance with FOIA/PA, HIPAA, and every order of this Court;

(2)     Find the Agencies in violation of FOIA/PA for refusing to release the requested documents in the Agencies' possession;

(3)     Find that the Agencies' conduct was arbitrary, capricious, or otherwise not in accordance with the law and refer the matter to the Merit System Protection Board for investigation. 5 U.S.C. § 552(a)(4)(F).

(4)     Enjoin the Agencies from withholding all responsive records, or segregable portions thereof, that were requested by Hammond and order their immediate disclosure thereto;

(5)     Enjoin the Agencies from engaging in practices or patterns of behavior that violate FOIA/PA and/or DoD's implementing regulations;

(6)     Order the Agencies to respond to each of Plaintiff's requests fully and completely in a manner that will allow Hammond to gauge the adequacy of the response;

(7)     Find the Agencies in violation of Privacy Act by incurring a breach of a DVD of Hammond's medical records, and then failing to comply with breach reporting and individual notification requirements;

(8)     Order the agencies to conduct an investigation to determine the circumstances of the breach (including therein matters relating to the lifecycle management and postal delivery of these PA records), and to attempt to recover the breached records;

(9)     Order the agencies to notify Hammond of the results of any investigations into the breach of Hammond's medical records, including the circumstances of the breach, any and all investigations conducted, what the agency is doing to mitigate the loss of his records, and any other information required by OPM;

(10)     Award reasonable costs and attorneys' fees to Hammond as provided in 5 U.S.C. § 552(a)(4)(E) and/or 28 U.S.C. § 2412(d); and

(11)     Grant such other relief as the Court may deem just and proper.

Respectfully submitted,

Alexander J. E. English, Esq.
D.C. Dist. Ct. Bar #MD0005
GreenSpring Legal, LLC
9980 Guilford Rd. #102
Jessup, MD 20794
Phone: 301-466-4024
Date:  March 2, 2016                    E-mail: aenglish@greenspringlegal.com