## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **ROBERT HAMMOND,** | ) |
|  | ) |
| **Plaintiff,** | ) |
|  | ) |
| **v.** | )     **Civil Action No. 16-421 (KBJ)** |
|  | ) |
| **U.S. DEPARTMENT OF DEFENSE, et al.,** | ) |
|  | ) |
| **Defendants.** | ) |
|  | ) |

### DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT

Defendants, United States Department of Defense, Defense Health Agency, and the Walter Reed National Military Medical Center, by their undersigned attorneys, respectfully move the Court, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for an order granting summary judgment in favor of defendants on the grounds that no genuine issue as to any material fact exists and defendants are entitled to judgment as a matter of law.  In support of this motion, the Court is respectfully referred to defendants' accompanying declarations, the Statement of Material Facts As To Which There Is No Genuine Issue, and the Memorandum of Points and Authorities In Support of Defendants' Renewed Motion For Summary Judgment.  A proposed order is also attached.

Respectfully submitted,

CHANNING D. PHILLIPS, D.C. BAR #415793
United States Attorney
 for the District of Columbia

DANIEL F. VAN HORN, D.C. BAR #924092
Chief, Civil Division

_/s/ Marina Utgoff Braswell_
MARINA UTGOFF BRASWELL, D.C. BAR #416587
Assistant United States Attorney
U.S. Attorney's Office
555 4th Street, N.W. - Civil Division
Washington, D.C. 20530
(202) 252-2561
Marina.Braswell@usdoj.gov

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ROBERT HAMMOND,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 16-421 (KBJ)** |
| ) | |
| **U.S. DEPARTMENT OF DEFENSE, et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## DEFENDANTS' STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE

Pursuant to Local Rule 7(h), defendants Department of Defense ("DOD"), Defense Health Agency ("DHA"), and Walter Reed National Military Medical Center ("WRNMMC") submit this statement of material facts as to which there is no genuine issue:

1.  By letter dated April 1, 2014, plaintiff requested under the Freedom of Information Act ("FOIA") the FY 2013 FOIA Report Submission for WRNMMC.  Third Declaration of Judy L. Bizzell ("Third Bizzell Decl."), attached, ¶ 4; Fourth Declaration of Judy L. Bizzell ("Fourth Bizzell Decl."), attached, ¶ 4.

2.  The FY 2013 FOIA Report Submission for WRNMMC is being produced to plaintiff as Exhibit B to the attached Fourth Bizzell Declaration.  Fourth Bizzell Decl., ¶ 4 & Ex. B.

3.  Pursuant to Exemption 6 of the FOIA, the WRNMMC has withheld the names of individuals in order to protect the privacy of those seeking access to medical records.  Third Bizzell Decl., ¶¶ 9-10; Fourth Bizzell Decl., ¶ 4.

4.  The information withheld under Exemption 6 would reveal nothing about the activities and/or operations of the government.  Third Bizzell Decl., ¶¶ 9-10; Fourth Bizzell Decl., ¶ 4.

5.  By letter dated April 11, 2014, plaintiff requested under the FOIA the four FY13 Quarterly Privacy Act Report Submissions for WRNMMC.  Third Bizzell Decl., ¶ 12; Fourth Bizzell Decl., ¶ 11.

6.  WRNMMC has no separate Quarterly Privacy Act Reports.  Third Bizzell Decl., ¶ 13.

7.  WRNMMC Privacy Act information is contained in the WRNMMC FOIA Log and in emails sent to the Department of Navy Bureau of Medicine ("BUMED").    Third Bizzell Decl., ¶ 13; Fourth Bizzell Decl., ¶ 9.

8.  WRNMMC FY13 Quarterly Privacy Act Report Submissions for WRNMMC is being produced to plaintiff in Exhibits B & C to the attached Fourth Bizzell Declaration.  Fourth Bizzell Decl., ¶ 9.

9.  By letter dated April 26, 2014, plaintiff requested under the FOIA WRNMMC FOIA tracking numbers and dates pertaining to his FOIA requests that were received by WRNMMC from February 26, 2013 through January 17, 2014.  Third Bizzell Decl., ¶ 22.

10.  Tracking numbers and dates pertaining to plaintiff's identified FOIA requests are contained in the responsive letters sent by WRNMMC to plaintiff with respect to his FOIA requests, and those responsive letters also contained the dates of his requests; such information is also contained in the WRNMMC FOIA Processing Logs.  Third Bizzell Decl., ¶ 23; Fourth Bizzell Decl., ¶ 12.

11. Plaintiff may request access to the letters sent to him if he so desires; the WRNMMC FY 2013 FOIA Processing Log is being produced to plaintiff as Exhibit B to the Fourth Bizzell Declaration.  Fourth Bizzell Decl., ¶ 12  & Ex. B.

12. By letter dated May 6, 2014, plaintiff requested under the FOIA records identifying the WRNMMC FY13 and FY14 reporting Chain of Command for the FY 2013 and FY 2014 FOIA Reports and the FY 2013 and FY 2014 Quarterly Privacy Act Reports to Congress.  Third Bizzell Decl., ¶ 16.

13. In an email dated August 18, 2014, WRNMMC responded by providing plaintiff with the full name and address of the Defense Health Agency Office, which is the office that the WRNMMC reports to with respect to FOIA and Privacy Act reports.  Third Bizzell Decl., ¶ 17.

14. On March 9, 2017, WRNMMC provided plaintiff with copies of WRNMMC's FY 2013 quarterly reports sent to BUMED, as these documents show the chain of command.  Third Bizzell Decl., ¶¶ 17-19.

15. By letter dated May 25, 2014, plaintiff requested under the FOIA the individualized WRNMMC Tracking numbers for twenty FOIA requests which plaintiff assigned with his personal control numbers 14-B trough 14-U and records showing the dates these requests were received by WRNMMC.  Fourth Bizzell Decl., ¶ 11.

16. Tracking numbers and dates pertaining to plaintiff's identified FOIA requests are contained in the responsive letters sent by WRNMMC to plaintiff with respect to his FOIA requests, and those responsive letters also contained the dates of his requests; such information is also contained in the WRNMMC FOIA Processing Logs.   Fourth Bizzell Decl., ¶¶  12 & A & B.

3

17.   Plaintiff may request access to the letters sent to him if he so desires; the WRNMMC FY 2014 FOIA Processing Log is being produced to plaintiff as Exhibit A to the Fourth Bizzell Declaration.  Fourth Bizzell Decl., ¶ 12  & Ex.A.

18.   By letter dated April 26, 2014, plaintiff requested under the FOIA that WRNMMC provide a copy of the front side of a DVD of plaintiff's medical records in WRNMMC's possession that was given to WRNMMC by plaintiff in 2012 ("Plaintiff's 2012 DVD").  Third Bizzell Decl., ¶ 28.  WRNMMC provided plaintiff with that information.  See id.

19.   By the same letter dated April 26, 2014, plaintiff also requested under the FOIA that WRNMMC provide plaintiff with a copy of the front side of a DVD of medical records that WRNMMC sent to plaintiff in 2013 ("WRNMMC 2013 DVD"), which was a copy of the Plaintiff's 2012 DVD.  Third Bizzell Decl., ¶ 28.  WRNMMC provided plaintiff with that information.  See id.

20.   By letter dated April 26, 2014, plaintiff requested under the FOIA records pertaining to two unsolicited packages plaintiff claims he mailed to WRNMMC by certified mail with USPS tracking numbers.  Second Declaration of Judy Bizzell ("Second Bizzell Decl."), ¶ 28.

21.   WRNMMC performed a reasonable search for the requested information but could locate no responsive information.  Second Bizzell Decl., ¶¶ 29-33.

22.   No responsive records were located because WRNMMC never received the packages plaintiff allegedly sent to WRNMMC.  Second Bizzell Decl., ¶ 33.

23.   With respect to the FOIA requests that are at issue in this litigation, all reasonably segregable information has been disclosed to plaintiff.  Fourth Bizzell Decl., ¶ 34.

Respectfully submitted,

CHANNING D. PHILLIPS, D.C. BAR #415793
United States Attorney
  for the District of Columbia

DANIEL F. VAN HORN, D.C. BAR #924092
Chief, Civil Division


 /s/ *Marina Utgoff Braswell*
MARINA UTGOFF BRASWELL, D.C. BAR #416587
Assistant United States Attorney
U.S. Attorney's Office
555 4th Street, N.W. - Civil Division
Washington, D.C. 20530
(202) 252-2561
Marina.Braswell@usdoj.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ROBERT HAMMOND,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 16-421 (KBJ)** |
| ) | |
| **U.S. DEPARTMENT OF DEFENSE, et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**
**OF DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGEMENT**

**PRELIMINARY STATEMENT**

Plaintiff filed this civil action against defendants Department of Defense ("DOD"), THE

Defense Health Agency ("DHA"), and the Walter Reed National Military Medical Center

("WRNMMC"), alleging that WRNMMC violated the Freedom of Information Act ("FOIA"), 5

U.S.C. § 552, in connection with certain requests for information made by plaintiff.  On the

contrary, as demonstrated in the accompanying Second Declaration of Judy L. Bizzell ("Second

Bizzell Decl.") Third Declaration of Judy L. Bizzell ("Third Bizzell Decl."), and Fourth

Declaration of Judy L. Bizzell ("Fourth Bizzell Decl."), and explained below, the only

responsive information to be withheld from plaintiff consists of the names of third parties

seeking medical records.  This information was withheld under FOIA Exemption 6 because its

release would constitute a clearly unwarranted invasion of the privacy of these individuals.

Defendants incorporate by reference the description of plaintiff's FOIA requests to WRNMMC

set forth in the accompanying Statement of Material Facts as to Which There is no Genuine Issue.

Accordingly, because there are no reasonable disputes of material fact, defendants are entitled to judgment as a matter of law, and their motion for summary judgment should be granted.

## ARGUMENT

Plaintiff's Amended Complaint in this case raises claims with respect to eight separate FOIA requests.  For ease of review, defendants address each request, and respond to plaintiff's arguments with respect to each request, separately below.

### 1.     FY 2013 WRNMMC Annual FOIA Report to BUMED

By letter dated April 1, 2014, plaintiff submitted a FOIA request to the Department of Navy Bureau of Medicine ("BUMED"), requesting under the FOIA a copy of the WRNMMC FY 2013 Annual FOIA Report, including all enclosures and any raw data, as it was received by BUMED.   Fourth Bizzell Decl., ¶ 4.

As the Third Bizzell Declaration explains, the WRNMMC did not create a FY 2013 Annual FOIA Report because it does not create these kinds of reports.  Id. at ¶ 6.  Instead, the DHA compiles and submits final Annual FOIA reports which include the information provided by the WRNMMC FOIA Office.  The websites containing the final DHA FY 2013 and 2014 reports were previously provided to plaintiff and can be found at http://health.mil/Military-Health-Topics/Privacy-and-Civil-Liberties/FOIA/FOIA-Library. The Report can be located by query from that website at http://health.mil/Search-Results?query=FY13%20Annual%20Report. Fourth Bizzell Decl., ¶ 8.

Although the WRNMMC could have stopped there, and simply informed plaintiff that there were no responsive records, the WRNMMC read plaintiff's request in a generously broad manner to include the WRNMMC's FY 2013 FOIA Processing log, which in 2013 the WRNMMC provided to BUMED for inclusion in the annual FOIA Report.  Id.  Because the WRNMMC does not create a separate FY 2013 Privacy Act Report, Privacy Act information is combined with FOIA information in this same report.  Third Bizzell Decl., ¶¶ 7, 13.

The WRNMMC has released its FY 2013 FOIA Processing Log to plaintiff.  Fourth Bizzell Decl., ¶¶ 4-6; 8-10 & Ex. B.  The WRNMMC properly applied Exemption 6 to protect substantial privacy interests of individuals who made either FOIA or Privacy Act requests to the agency.  See Third Bizzell Dec., ¶¶ 9-11, 33; Fourth Bizzell Decl., ¶¶ 4-6.  Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  In a definitive opinion on the meaning of the term "similar files," the Supreme Court held that Exemption 6 "' [was] intended to cover detailed government records on an individual which can be identified as applying to that individual.'"  Department of State v. Washington Post Co., 456 U.S. 595, 602 (1982) (quoting H.R. Rep. No. 1497, 89th Cong., 2d Sess. 11, reprinted in 1966 U.S. Code Cong. & Admin. News 2428); New York Times Co. v. NASA, 920 F.2d 1002, 1005 (D.C. Cir. 1990 (en banc).

In Washington Post Co., the Supreme Court held:

> '[T]he protection of an individual's right of privacy' which Congress sought to achieve by preventing 'the disclosure of [information] which might harm the individual,' H.R. Rep. No. 1497, supra, at 11, surely was not intended to turn upon the label of the file which contains the damaging information.

Id. at 456 U.S. at 601.  Thus, even information which is not specifically located in "personnel files" comes within the penumbra of Exemption 6.  Indeed, the Supreme Court clarified that all

3

information that "applies to a particular individual" meets the threshold requirement for Exemption 6." Id. at 599-603, 601; Lepelletier v. FDIC, 164 F.3d 37, 46 (D.C. Cir. 1999) ("The Supreme Court has interpreted the phrase 'similar files' to include all information that applies to a particular individual.").  This broad construction of "similar files" was necessary in view of Congress' primary purpose in enacting Exemption 6, which was "to protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information."   Washington Post Co., 456 U.S. at 599.

Because Walter Reed is a medical facility and employer, its running list of FOIA and Privacy Act requests implicate both personnel as well as medical files, and the running list of FOIA and Privacy Act requests should be, at a minimum, considered a medical or similar file. See Consumers' Checkbook Ctr. for the Study of Servs. v. HHS, 554 F.3d 1046, 1050 (D.C. Cir. 2009) ("It is undisputed that the requested Medicare records are personnel, medical, or 'similar files.'"); Lakin Law Firm, P.C. v. FTC, 352 F.3d 1122, 1123 (7th Cir. 2003) (finding that consumer complaints filed with the FTC "clearly fall[] within the exemption [6]");WRNMMC determined that disclosure of the existence of FOIA or PA requests would constitute a substantial invasion of privacy interests for the requesters.

In this case the WRNMMC has withheld under Exemption 6 the names of individuals who have made requests for medical records from the WRNMMC.  Third Bizzell Decl., ¶ 9 & n.1; Fourth Bizzell Decl., ¶¶  4-6.  As the information in question can "be identified as applying to [a particular] individual,"  Washington Post Co., 456 U.S. at 602, the information is contained in files which clearly satisfy the threshold requirement of Exemption 6 as defined by the Supreme Court.

4

Having established that the withheld information meets the threshold requirement of Exemption 6, a determination must then be made as to whether disclosure would constitute a "clearly unwarranted invasion of personal privacy."  This requires a balancing of the public interest in disclosure against the individual privacy interest which would be invaded by release of the information.  See U.S. Dept. of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749, 773 (1989) (Reporters Committee for Freedom of the Press); U.S. Department of the Air Force v. Rose, 425 U.S. 352, 372 (1976).  The limiting language, "clearly unwarranted invasion of personal privacy," strikes "a proper balance between protection of an individual's right of privacy and preservation of the public's right to government information by excluding those kinds of files the disclosure of which might harm the individual."  U.S. Dep't of the Air Force v. Rose, 425 U.S. at 372 (citations omitted).

The first step in assessing the propriety of information withheld under Exemption 6 requires an identification of the privacy interest at issue.  See Reporters Committee for Freedom of the Press, 489 U.S. at 763.  In the usual case, the Court looks to see whether the information requested, if released, would violate a recognized substantial privacy interest of the subject of such information.  See Consumers Checkbook Study for the Services v. U.S. Dep't of Health and Human Services, 554 F.3d 1046, 1050 (D.C. Cir. 2008);  Nat'l Ass'n of Retired Fed. Employees v. Horner, 879 F.2d 873, 874 (D.C. Cir.1989).; Ripskis v. Dep't of Housing and Urban Development, 746 F.2d 1, 3 (D.C. Cir. 1984).

As the D.C. Circuit has explained:

> In this context, "[a] substantial privacy interest is anything greater than a *de minimis* privacy interest."  Multi Ag, 515 F.3d at 1229–30.  If a substantial privacy interest exists, then that interest must be balanced against any public interest in disclosure. Id.  "[T]he only relevant public interest in the FOIA

5

balancing analysis [is] the extent to which disclosure of the information sought would 'shed light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.' " Dep't of Def. v. Fed. Labor Relations Auth., 510 U.S. 487, 497, 114 S. Ct. 1006, 127 L.Ed.2d 325 (1994) (quoting Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 773, 109 S. Ct. 1468, 103 L.Ed.2d 774 (1989)).  The "use for which the requestor seeks the information is not relevant for purposes of determining the public interest." Multi Ag, 515 F.3d at 1231 n. 2 (citing Nat'l Ass'n of Retired Fed. Employees, 879 F.2d at 875).  FOIA's "strong presumption in favor of disclosure," Dep't of State v. Ray, 502 U.S. 164, 173, 112 S. Ct. 541, 116 L.Ed.2d 526 (1991), is "at its zenith" in this Exemption 6 analysis.  Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 37 (D.C. Cir. 2002).  "[U]nless the invasion of privacy is 'clearly unwarranted,' the public interest in disclosure must prevail." Ray, 502 U.S. at 177, 112 S. Ct. 541.

Jurewicz v. U.S. Dep't of Agric., 741 F.3d 1326, 1332 (D.C. Cir. 2014).  An individual's name associated with a request for medical records clearly raises sensitive privacy issues.

Once a privacy interest has been found to exist, a determination regarding whether information has been properly withheld necessitates a balancing of the individual's right to privacy against the public's right of access to information in government files.  See, e.g., Reporters Committee for Freedom of the Press, 489 U.S. at 774.  If a document invades a third party's privacy, and does not contain "official information" shedding light on government functions, it may be withheld under Exemption 6.  Id.

Here, the disclosure of personal information about the individuals whose identities are being protected is simply not relevant to the public's understanding of the government's conduct of its business.  Invocation of Exemption 6 to protect this private information is consistent with the Supreme Court's view of the FOIA as stated in Reporters Committee for Freedom of the Press:

> Other portions of the FOIA itself bolster the conclusion that disclosure of records regarding private citizens, identifiable by name, is not what the framers of FOIA had in mind.

6

489 U.S. at 756.

Although there may be some legitimate public interest in the volume of FOIA and Privacy Act requests being handled by a sub-component of the Department of Defense, there is no legitimate public interest in the names of the particular requesters in this context because disclosure would link them with – or at least tend to suggest strongly -- information about their medical care. Nat'l Sec. News Serv. v. U.S. Dep't of Navy, 584 F. Supp. 2d 94, 96 (D.D.C. 2008) ("Records . . . indicating that individuals sought medical treatment at a hospital are particularly sensitive."). Indeed, the making of a FOIA or Privacy Act request (as opposed to the responding to it) does not reflect anything that the agency is up to. The substantial privacy interests of individuals who request records from a medical facility clearly outweigh the public interest in their identities.

Accordingly, defendants have demonstrated that they have gone beyond what was required under the FOIA, by giving plaintiff the only information the WRNMMC has with respect to FY 2013 FOIA processing information, even though it does not consist of an annual report requested by plaintiff, because such a report does not exist. The only redactions made to the information produced were the names of individuals seeking medical records, which is exempt from release under Exemption 6 of the FOIA.

## 2. FY 2013 Quarterly Privacy Act Report Submissions to BUMED

By letter dated April 11, 2014, plaintiff submitted a FOIA request to BUMED, requesting under the FOIA a copy of the WRNMMC FY 2013 Quarterly Privacy Act Report submissions as received by BUMED, including any raw data. Third Bizzell Decl., ¶ 12. As the Third Bizzell Declaration explains, Ms. Bizzell was the person responsible in 2013 for forwarding a quarterly

7

submission of FOIA and Privacy Act information to either Della Garcia in BUMED or Robin

Patterson, if such information was requested.  Id. at ¶¶ 13-14.   Ms. Bizzell would send this

information by email.  Id.  No raw data was transmitted, other than what was contained in the

email.  Id.  In response to plaintiff's April 11, 2014 FOIA request, Ms. Bizzell searched her

emails dating back to 2013 for any email sent to Della Garcia or Robin Patterson, the two

individuals to whom Ms. Bizzell would forward a quarterly submission in FY 2013, if one was

done, with WRNMMC  FOIA and Privacy Act information.  Id. at ¶¶13-14.  Ms. Bizzell only

located the one responsive document, which was released to plaintiff in full on March 9, 2017.

Id. at ¶ 14.  Ms. Bizzell located three additional emails which are being released to plaintiff, even

though they do not constitute a quarterly submission.  Fourth Bizzell Decl., ¶ 9 & Ex. C.  Thus,

plaintiff has been provided with all the information that could reasonably be considered

WRNMMC quarterly report submissions for FY 2013, and more.

### 3.  Tracking Numbers

By letter dated April 26, 2014, plaintiff requested the WRNMMC FOIA tracking

numbers and dates the FOIA requests were received for a list of his FOIA requests in an

attachment to plaintiff's request.  Third Bizzell Decl., ¶ 22.   The WRNMMC's FOIA Office did

not assign separate tracking numbers to each of plaintiff's FOIA requests.  Instead, some of the

FOIA requests were combined and assigned one tracking number.  Third Bizzell Decl., ¶ 24.

As the Third Bizzell Declaration explains, the only responsive records would consist of

the letters previously sent to plaintiff which assigned a tracking number in response to his FOIA

requests, and the WRNMMC FY 2013 FOIA log.  Id., ¶ 23; Fourth Bizzell Decl., ¶ 12.  The

Fourth Bizzell Declaration states:

We did not re-release to plaintiff the letters we sent to him with his tracking numbers.  If plaintiff wants copies of those letters, which he has already received, we will make them available upon request.  The FY 2013 FOIA Processing Log is attached as Exhibit B.

Id. at ¶ 12.

Thus, plaintiff has either received the information he sought with respect to this request or been told that it will be made available to him if he wants what was already previously given to him.  To the extent that certain tracking numbers do not exist, the FOIA provides no cause of action for any such omission.

### 4.  Reporting Chains of Command

By letter dated May 6, 2014, plaintiff requested "the WRNMMC FY 2013 and FY 2014 reporting chain of command for the Annual FOIA Report submission to Congress and the Quarterly Privacy Report submissions to include submissions from WRNMMC to the next higher headquarters . . ."  Third Bizzell Decl., ¶ 16.

Although the FOIA does not require agencies to answer questions, Hudgins v. IRS, 620 F. Supp. 19, 21 (D.D.C.1985), aff'd, 808 F.2d 137 (D.C. Cir. 1987), cert. denied, 484 U.S. 803, (1987), the WRNMMC provided plaintiff with the information requested.   Third Bizzell Decl, ¶ 17.  Plaintiff also was provided with emails showing the reporting chain of command.  Fourth Bizzell Decl., Ex. C.

Plaintiff previously argued that the agency erred in sending him an email with the information requested, because a FOIA request is one for records . The WRNMMC then searched for additional responsive records and agreed to provide plaintiff, without redactions, records containing information about the establishment of DHA and the organization and

9

operation of DoD's records management program.  <u>See</u> Third Bizzell Decl, ¶ 20.  Those

documents have been produced to plaintiff.  Fourth Bizzell Decl., Ex. E.

Here, plaintiff's discrete, narrow request was answered by the WRNMCC, and he has

been provided with further responsive information.  Because the WRNMMC's search was

reasonable, summary judgment in favor of defendants on this request is warranted.

### 5.  Individualized Tracking Numbers for 20 FOIA Requests

By letter dated May 25, 2014, plaintiff requested the tracking numbers and dates of his

prior FOIA requests from April 26, 2014 through May 6, 2014.  Fourth Bizzell Decl., ¶ 15.  As

the Third Bizzell Declaration explains, the only records responsive to a request for tracking

numbers would consist of the letters previously sent to plaintiff which assigned a tracking

number in response to his FOIA requests, and the WRNMMC FOIA logs.  <u>Id</u>., ¶ 23; Fourth

Bizzell Decl., ¶ 15.  The Fourth Bizzell Declaration states:

> We did not re-release to plaintiff the letters we sent to him with his tracking
> numbers.  If plaintiff wants copies of those letters, which he has already received,
> we will make them available upon request.  The FY 2014 FOIA Processing Log is
> attached as Exhibit A.

<u>Id</u>. at ¶ 15.

Thus, plaintiff has either received the information he sought with respect to this request

or been told that it will be made available to him if he wants what was already previously given

to him.  To the extent that certain tracking numbers do not exist, the FOIA provides no cause of

action for any such omission.

### 6.  Documents Relating to DVD Chain of Custody

Plaintiff submitted a FOIA request dated April 20, 2014, for records relating to a

purported chain of custody for a DVD of his own medical records that he had created and given

to Judy Logeman of the WRNMMC.  Second Bizzell Decl., ¶ 20.  The WRNMMC has located

the DVD and it remains in the FOIA Office.  Third Bizzell Decl., ¶ 27.  The FOIA Office has

thoroughly searched its emails for any correspondence involving the transfer of the DVD from

Ms. Logeman to the Medical Records Department to the FOIA Office, but no responsive records

were located.  Id.

> The Third Bizzell Declaration explains that:
>
> There is no written documented chain of custody for the Original 2012 DVD
> Plaintiff gave to Judy Logeman.  I thoroughly searched for records or
> correspondences showing anything related to the transfer of the Original 2012
> DVD between WRNMMC parties. I searched all my files on my computer and
> my emails. [footnote omitted] I am the only person who would retain these
> emails.  I searched my emails for the correspondences with Judy Logeman or
> Thurman McCall and found none.  Mr. McCall was a records technician and Judy
> Logeman gave him the Original 2012 DVD.  Mr. McCall informed me that he had
> no records concerning the chain of the custody of Plaintiff's Original 2012 DVD.
> I had no emails with Mr. McCall or Judy Logeman concerning this DVD.  My
> best recollection was Mr. McCall called me to notify me he had a DVD from
> Plaintiff and he delivered the DVD by hand.  The DVD movement was entirely
> within the normal course of business.  The Original 2012 DVD went from Judy
> Logeman to the Medical Records office, who then delivered it to me.   Plaintiff's
> Ex. 15, 02; ECF Document 1-5, p. 18; Plaintiff's Brief at 18 note 17, ECF
> Document 24-1, p. 36.  The WRNMMC FOIA Office retains the Original 2012
> DVD in Plaintiff's FOIA file.

Id. at ¶ 27.

Thus, the Third Bizzell Declaration demonstrates that a reasonable search was performed

for responsive records and none were located with the exception of those emails referenced in

footnote four.  Id. at ¶ 27& n. 4.  Those emails have been produced to plaintiff.  Fourth Bizzell

Decl., ¶ 5  & Exs. D & G.

### 7.  Photocopies of 2012 and 2013 DVD Labels

By letter dated April 26, 2014, plaintiff requested "photocopies of the front side disk

labels of both the original and the copy of the DVDs containing my medical records that are in

the WRNMMC FOIA Office custody. . ."  Third Bizzell Decl., ¶ 28.

By way of background, Ms. Bizzell explains that:

The WRNMMC FOIA Office presently has three DVDs on file.  The Original
2012 DVD has a front disk label that is the image at Plaintiff's Ex. 17, 011.  I
hand-wrote the words "Patient: Robert Hammond" on the Original 2012 DVD
after I received it.  On June 29, 2013, Plaintiff asked for a copy of the Original
2012 DVD.  Plaintiff's Ex. 17, 005.  The front label of that copy, which was a
new label made for that copy, is at Plaintiff's Ex. 17, 008.  The copy's label is
marked "FOIA #14-08 Hammond #13-06 because those were the referenced
FOIA requests for the copy of the DVD.  There is a third DVD labeled "Robert
Hammond" (top of DVD) and "Physicians Notes," "Nursing Shift Notes,"
"Nursing Notes," and "Past Hospitalizations" (bottom of DVD, the image at Ex.
17 012  The third DVD is not at issue in this case.  Plaintiff's Ex. 17, 002, ECF
Document 1-5, p. 39 (Plaintiff said, "I am not appealing this image").

Third Bizzell Decl., ¶ 29.

Ms. Bizzell explains that the label on the Original 2012 DVD that was sent to plaintiff

was the original label plaintiff had used plus her added handwritten note saying "Patient: Robert

Hammond".  Third Bizzell Decl., ¶ 29.  The 2013 DVD copy had a new label made for it, and a

copy of that label was also sent to plaintiff.  Third Bizzell Decl., ¶ 29.

Thus, plaintiff was provided with what he requested -- photocopies of the labels of the

DVDs with his name on them as those labels existed at the time of his request

### 8.  Documents Relating to Two Packages

By letter dated April 26, 2014, plaintiff requested records relating to two packages he

allegedly sent to the WRNMMC's FOIA Officer with particular 24-digit tracking numbers.

Amended Complaint, ¶ 136; Second Bizzell Decl., 28.  Defendants were unable to locate either

the packages or any records relating to them in response to Plaintiff's FOIA request.  Third

Bizzell Dec., ¶¶ 31-32.

The WRNMMC made repeated efforts to try and locate responsive information.  Second

Bizzell Decl., ¶¶ 29-33.

As Ms. Bizzell explains:

Two employees would likely have information about the packages, Ms. Elide Simpson, a
contract employee and mail clerk who served the WRNMMC Privacy Office and Ms.
Meki Gulley, WRNMMC Post Office supervisor.  On or about May 22, 2014, May 26,
2014, June 12, 2014, June 24, 2014, and July 15, 2014, the WRNMMC FOIA Office
inquired about the packages and their mailing records with Ms. Simpson (in person) and
Ms. Gulley (by phone).  They searched their offices, where these packages would likely
be, and did not find Plaintiff's packages or related mailing records.

On or about July 25, 2014, the WRNMMC FOIA Office replied to Plaintiff in a letter
attached to an email, paragraph 4, "We find that (other than the emails you currently
have), there is No Record for your request for further correspondences, emails, etc.,
regarding tracking numbers 7012 1640 0000 9665 4524 1035 and 1640 000 9665 4524.
This matter is closed in this office." The letter cited the case number WRNMMC #14-38.

The WRNMMC FOIA Office continued to look for the packages and made similar
inquires with Ms. Gulley at the WRNMMC Post Office on or about August 12, 2014, and
August 21, 2014, with no results.  On or about August 28, 2014, USPS.com showed item
#1640 000 9665 4524 was never logged into the USPS system.  The WRNMMC FOIA
Office concluded its search efforts having taken reasonable measures and exhausted the
search for records pertaining to the unsolicited packages Plaintiff claims to have mailed.
No responsive records were located.

Plaintiff continued to inquire about the two packages in 2015.  The WRNMMC FOIA
Office made inquiries with Ms. Gulley at the WRNMMC Post Office on or about
February 18, 2015, April 7, 2015, May 11, 2015, and November 6, 2015.  The
WRNMMC Post Office did not locate responsive records because the packages were
never received by WRNMMC.

Second Bizzell Decl., ¶¶ 29-33.  No responsive records were located because WRNMMC never

received the packages plaintiff allegedly sent to WRNMMC.  Id. at ¶ 33.

After plaintiff filed his opposition to defendant's initial motion for summary judgment, the WRNMMC physically searched the FOIA Office to which the packages were apparently directed (by plaintiff's description), checked with the employees who handle incoming packages for the FOIA Office, and even conducted a further search.  As the Third Bizzell Declaration explains:

> I contacted Ms. Meki Gulley, WRNMMC Post Office supervisor again on May 22, 2017.  She acknowledged receipt of Plaintiff's Exhibit 5-3, UPS tracking number 7012 1640 0000 9665 4524, but did not have the package and had no paper record.  She never found USPS tracking number 7012 1640 0000 9665 1035.

Id. at ¶ 32.

Thus, the WRNMMC performed a reasonable search for records responsive to plaintiff's request.

## II.     The WRNMMC Has Performed an Adequate Search for Responsive Documents with Respect to Plaintiff's Remaining Requests.

To prevail in a FOIA case, a requester must show that an agency has "(1) 'improperly' (2) 'withheld' (3) 'agency records.'"  Department of Justice v. Tax Analysts, 492 U.S. 136, 142 (1989) (quoting Kissinger v. Reporters Comm. for Freedom of Press, 445 U.S. 136, 150 (1980)); see 5 U.S.C. § 552(a)(4)(B).  The agency must establish that it has conducted a search reasonably calculated to uncover all responsive records.  See, e.g., Baker & Hostetler LLP v. Department of Commerce, 473 F.3d 312, 318 (D.C. Cir. 2006); Valencia-Lucena v. United States Coast Guard, 180 F.3d 321, 325-26 (D.C. Cir. 1999); Truitt v. Department of State, 897 F.2d 540, 542 (D.C. Cir. 1990).

Although the adequacy of the search is "dependent upon the circumstances of the case," Truitt v. Department of State, 897 F.2d at 542, the agency "must show that it made a good faith

14

effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." Oglesby v. Department of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990).  In this connection, it is axiomatic that the fundamental question is not "'whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate.'" Steinberg v. Department of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994) (quoting Weisberg v. Department of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984)); accord Nation Magazine v. Customs Service, 71 F.3d 885, 892 n.7 (D.C. Cir. 1995).

The FOIA does not require that an agency search every division or field office on its own initiative in response to a FOIA request when responsive documents are likely to be located in one place.  Kowalczyk v. Department of Justice, 73 F.3d 386, 388 (D.C. Cir. 1996).  Nor does the FOIA require that an agency search every record system.  Oglesby, 920 F.2d at 68.

The "[f]ailure to turn up [a specified] document does not alone render [a] search inadequate." Nation Magazine, 71 F.3d at 892, n.7.  Nor is the issue before the Court "whether there might be any further documents," Kowalczyk, 73 F.3d at 388; rather, it is whether the search was adequate.  Weisberg, 745 F.2d at 1485. In order to prove that its search was reasonable, the agency is entitled to rely upon affidavits, provided that they are relatively detailed, nonconclusory, and submitted in good faith.  Id. at 1486.; Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982) ("affidavits that explain in reasonable detail the scope and method of the search conducted by the agency will suffice to demonstrate compliance with the obligations imposed by the FOIA").  The affidavits must show "that the search method was reasonably

15

calculated to uncover all relevant documents," and should "explain how the search was conducted." Oglesby, 920 F.2d at 68.

The Second, Third and Fourth Bizzell Declarations demonstrate that defendants performed a reasonable search for responsive records. Because the methods of searching were reasonably based on the subject of plaintiff's request and WRNMMC's recordkeeping systems where responsive records might reasonably be expected to be located, defendants are entitled to summary judgment on the adequacy of their respective searches. See Larson v. Dep't of State, 565 F.3d at 869 (observing that the adequacy of an agency's search "is measured by the reasonableness of the effort in light of the specific request"); Am. Immigration Council v. U.S. Dep't of Homeland Sec., No. 11-1971, 2012 WL 5928643, at *4 (D.D.C. Nov. 27, 2012) (finding agency's methodology was "sound" where agency compared FOIA request to its offices' functions in order to determine which component offices to search).

## CONCLUSION

Accordingly, for all of the reasons set forth above and in the accompanying declarations, defendants respectfully submit that this motion for summary judgment should be granted.

Respectfully submitted,

CHANNING D. PHILLIPS, D.C. BAR #415793
United States Attorney
 for the District of Columbia

DANIEL F. VAN HORN, D.C. BAR #924092
Chief, Civil Division

 /s/ Marina Utgoff Braswell
MARINA UTGOFF BRASWELL, D.C. BAR #416587
Assistant United States Attorney
U.S. Attorney's Office
555 4th Street, N.W. - Civil Division

16

Washington, D.C. 20530
(202) 252-2561
Marina.Braswell@usdoj.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ROBERT HAMMOND,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )   **Civil Action No. 16-421 (KBJ)** |
| | ) |
| **U.S. DEPARTMENT OF DEFENSE, <u>et al.</u>,** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

## <u>ORDER</u>

Upon consideration of defendants' renewed motion for summary judgment, plaintiff's opposition, and the entire record in this case, the Court finds that there are no issues of material fact and the defendants are entitled to judgment as a matter of law.  Therefore, it is hereby

ORDERED that defendants' renewed motion for summary judgment is granted.

This is a final, appealable order.

_____
UNITED STATES DISTRICT JUDGE

18