IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Robert Hammond,<br><br>        Plaintiff,<br>v.<br><br>DEPARTMENT OF DEFENSE et al.,<br><br>        Defendant. | Case No. 16-421(KBJ) |

**THIRD DECLARATION OF JUDY J. BIZZELL, FREEDOM OF INFORMATION ACT (FOIA) OFFICER FOR WALTER REED NATIONAL MILITARY MEDICAL CENTER**

I, JUDY J. BIZZELL, hereby declare and state:

**I.     INTRODUCTION**

1. I am a Government Information Specialist assigned as the Freedom of Information Act (FOIA) Officer for Walter Reed National Military Medical Center (WRNMMC). I previously submitted a first declaration ("First Bizzell Declaration") in this matter dated 28 June 2016, and a second declaration ("Second Bizzell Declaration") dated 28 February 2017, which I hereby incorporate by reference.

2. Through the exercise of my official duties, I have become familiar with this civil action and the underlying FOIA requests. I make the following statements based upon my personal knowledge and information made available to me in my official

1

capacity. I am submitting this declaration in support of Defendant's Response to Plaintiff's Cross-Motion for Summary Judgment and Opposition to Defendants' Motion for Summary Judgment ("Plaintiff's Brief"), as well as Defendants' Supplemental Motion for Summary Judgment.

3. The purpose of this declaration is to explain and justify the WRNMMC's actions in responding to Plaintiff's FOIA requests at issue in this case. For the Court's convenience, I have identified below each of plaintiff's FOIA requests at issue in this case and addressed plaintiff's arguments with respect to each request with the WRNMMC FOIA Office's responses.

II. **PLAINTIFF'S FOIA REQUESTS**

   A. **Plaintiff's Request for FY13 WRNMMC FOIA Report (Amended Complaint, paragraph 56; Plaintiff's Brief, paragraph I(B))**

4. Plaintiff requested the FY 2013 Annual FOIA Report Submission for Walter Reed in a letter dated April 1, 2014, including all enclosures and any raw data, as it was received by Department of Navy Bureau of Medicine ("BUMED"). Plaintiff's Ex.3 at 20.[1]

5. The WRNMMC FOIA Office provided Plaintiff with the website to the Defense Health Agency FY13 Annual FOIA Report in Second Bizzell Declaration, p. 3 note 1 and, again, on March 9,

---

[1] References to Plaintiff's exhibits refer to the exhibits attached to Plaintiff's original Complaint at Docket No. 1 or attached to Plaintiff's cross-motion for summary judgment.

2

2017. Plaintiff's Ex B11 001, ECF Document 24-12, pp. 1-2. The Defense Health Agency ("DHA") compiles and submits final Annual FOIA reports which include the information provided by the WRNMMC FOIA Office.

6. The WRNMMC FOIA Office does not create an annual FOIA Report. Instead, the WRNMMC FOIA Office creates a FOIA Log, which contains information that is transmitted to DHA and included in DHA's final Annual FOIA reports. The WRNMMC's FOIA Office had previously denied Plaintiff's request for the WRNMMC FOIA Log information that went into the FY13 Annual FOIA Report, pursuant to FOIA Exemption (b)(5), as an intra-agency, pre-decisional document, because the numbers submitted by the WRNMMC are not a final report. Second Bizzell Declaration, ¶ 7. The WRNMMC FOIA Office voluntarily withdrew the (b)(5) objections because the DHA FY13 Annual FOIA report became final. Therefore, on March 9, 2017, the WRNMMC FOIA Office provided Plaintiff with a copy of the WRNMMC FY13 FOIA Log, which lists information contributed by the WRNMMC towards the DHA FY13 Annual FOIA Report. Plaintiff's Ex B11 001, ECF Document 24-12, p. 1.

7. The WRNMMC FY13 FOIA Log, like other annual FOIA Logs, were my own creation, an organizational tool for me to keep track of all the FOIA and Privacy Act requests coming in to WRNMMC FOIA Office. The Log was not strictly required.

3

Different FOIA officers may have a different log or format, or nothing more than keeping a record of numbers. We have to account for the number of cases reported within a fiscal year. For this reason, I begin manually entering information into the FOIA Log on October 1st for the Fiscal Year and ordinarily end the Log for that Fiscal Year on September 30th of the next year, although occasionally after September 30th I would add information that was relevant to the fiscal year just completed. The FY13 FOIA Log was dated from October 1, 2012, and ended on September 30, 2013. All FOIA and Privacy Act requests received by WRNMMC FOIA Office during that time are included in the FY13 FOIA Log, which was produced to Plaintiff.

8. The WRNMMC FOIA Office provided a FY13 FOIA Log with data redacted under FOIA exemptions (b)(6) and certain subsections of (b)(7). There were no deletions of assigned FOIA numbers or dates received, as Plaintiff claims. The empty line after number 13-47 was a mis-numbering during spacing adjustment. There is no #28. No information was removed from the log. Plaintiff also notes the redacted FY13 FOIA Log submitted was sixteen pages while it was listed in the Vaughan Index as seventeen pages. Plaintiff's Brief, p. 12, ECF Document 24-1, p. 19. The loss of a page was the result of reformatting the font size to improve the FY13 FOIA Log's appearance.

4

9. Upon further review, the WRNMMC is no longer asserting Exemption (b)(7) for any information. The WRNMMC FOIA Office will re-release to Plaintiff the FY13 FOIA Log after removing the (b)(7) exemptions, but will still apply FOIA Exemption (b)(6) to withhold the names of certain individuals requesting access to medical records. No information was withheld under Exemption (b)(7) that was not also withheld under Exemption (b)(6). In each instance where line item information on the FY13 FOIA Log was withheld pursuant to Exemption (b)(6), each piece of information applied to a particular individual.[2] In asserting Exemption (b)(6), each piece of information was scrutinized to determine the nature and strength of the privacy interest of any individual whose name or identifying information appeared on the FOIA Log at issue.

10. In each instance where information was withheld, the individual had a privacy interest in the information being withheld pursuant to Exemption (b)(6), because the information withheld consists of the names of individuals requesting access to medical records. Disclosure of this information would constitute a substantial invasion of privacy. I also examined any public interest in the disclosure of the redacted

---

[2] Exemption (b)(6) was applied on the previously released FY13 FOIA Log to fifty-three requests for information. Having reviewed the FY13 FOIA Log again, I reduced Exemption (b)(6) redactions to only fifteen cases, those which are requests for medical records, and, in an abundance of caution, those appearing to involve a request for medical records.

5

information. In withholding the information, the individual's privacy interest was balanced against any public interest in disclosure. In each instance where information was withheld, it was determined that the individual's privacy interests outweighed any public interest in disclosure of the withheld information. Revealing the withheld information could reasonably be expected to cause substantial invasion of personal privacy, potential harassment or misuse of the information, particularly since release of this personal information to Plaintiff is a release to the world. There is no public interest in the names of the requestors seeking access to medical records. Disclosure of the withheld information would reveal nothing or very little about the operations or activities of WRNMMC FOIA Office or any other government office. As the privacy interests at stake clearly outweigh any public interest in disclosure, release of this information would constitute a clearly unwarranted, substantial invasion of personal privacy. Redactions of the line items were requests from private citizens requesting medical and other similar documents on themselves and/or others. FOIA requests for one's own medical records or any medical records are requests of a highly personal, sensitive nature. Release of the name of a person asking for medical records would shed no light on any government operations or activities. Requests for information from family members about

6

deceased or sexually-abused relatives address very sensitive and private information. Releasing the names of the requester and/or the name of the person that the documents concern would be substantial invasion of personal privacy, but would shed no light on any government operations or activities. Accordingly, the FY13 FOIA Log will be released again with only the redactions of Exemption (b)(6) information discussed above.

11. The information redacted did not obscure the requests of the FY13 FOIA Log. A reader could tell each entry was there. Plaintiff wanted to see his tracking numbers and dates of his FOIA requests. His name and entries on the FY13 FOIA Log were not redacted. The FY13 FOIA Log is the only relevant "raw data" record of numbers the WRNMMC FOIA Office sent to BUMED for inclusion into the Congressional Report. There is no other raw data or enclosures that accompany the WRNMMC's FOIA Log submission to BUMED. The WRNMMC FOIA Office will provide an adjusted copy of the FY13 FOIA Log, removing (b)(7) exemptions.

B. **Request for FY13 WRNMMC Quarterly Privacy Act Report Submissions (Amended Complaint, paragraph 68; Plaintiff's Brief, paragraph I(B)**

12. By letter dated April 11, 2014, Plaintiff requested the four FY13 Quarterly Privacy Act Report Submissions for Walter Reed as received by BUMED, including any raw data. Plaintiff Ex. 3 at 22.

7

13.     The WRNMMC Privacy Office does not create quarterly reports separately from the FOIA Log. In 2013, the higher reporting entity, BUMED, would compile final numbers of the quarter into a quarterly report. The WRNMMC FOIA Office uses a FOIA Log (ex. The FY13 FOIA Log) to compile FOIA and Privacy Act requests throughout the year. The numbers of the requests and what time of the year they were filed are available upon request to the higher headquarters.

14.     Having released the FY13 Annual FOIA Report on March 9, 2017, the WRNMMC FOIA Office released the FY13 FOIA Log, which reflected the FOIA and Privacy Act requests and time of year they were made. I thoroughly searched for other records or correspondences with our higher headquarters showing any of their requests for quarterly numbers and my replies. I searched all my files on my computer and my emails. There were no paper copy files to search. I am the only person who would create and retain these emails. I searched my emails for the points of contact Robin Patterson, Department of the Navy FOIA-Privacy Act; Della Garcia, BUMED; and Nadine Brown, DHA. On March 9, 2017, I provided Plaintiff with the only correspondences I found. (ECF Document 24-12, p. 1-7). These include an email dated January 24, 2013 to Robin Patterson and Della Garcia, which listed quarterly numbers of FOIA and Privacy Act requests. I found an additional three emails, dated August 28, 2013;

8

October 8, 2013; and October 10, 2013. Upon review they did not address FOIA numbers. These were the only documents I could locate and provide to Plaintiff. There were no other documents found. In the interest of demonstrating thorough search and completeness, I will provide the three emails in full to Plaintiff.

15. All WRNMMC submissions to FY13 Quarterly FOIA and Privacy Act Report would have been comprised of the FY13 FOIA Log, which was already released to Plaintiff. The Log format I created includes not only numbers but details of the FOIA and Privacy Act requests, making it the most responsive document to Plaintiff's requests. Accordingly, no information has been withheld from Plaintiff in connection with this request, except for information withheld under Exemption (b)(6), as described above.

C. **Request for WRNMMC 2013 and 2014 FOIA and Privacy Act Reporting Chain of Command (Amended Complaint, paragraph 99; Plaintiff's Brief, paragraph I(B)**

16. By letter dated May 6, 2014, Plaintiff submitted a FOIA Request to WRNMMC requesting records identifying the WRNMMC FY13 and FY14 reporting Chain of Command for the FY 2013 and FY 2014 FOIA Reports and the FY 2013 and FY 2014 Quarterly Privacy Act Reports to Congress. Plaintiff's Ex. 5 098-99.

17. In an email dated August 18, 2014, WRNMMC responded to the request providing Plaintiff with the full name and

9

address of the Defense Health Agency Office, which is the office that the WRNMMC reports to with respect to FOIA and Privacy Act reports, starting with FY 2014. Plaintiff's Ex 6 012. The three emails, dated August 28, 2013, October 8, 2013; and October 10, 2013, referenced in paragraph 14 above, show the reporting chain of command to BUMED in FY 2013.

18. Plaintiff appealed the August 18, 2014 response complaining that it was misleading, incomplete, and insisting that the response should include documents rather than a narrative response. Plaintiff's Ex. 6 001-006.

19. Plaintiff's suggestion of records detailed in his footnotes 11 and 12, were addressed on March 9, 2017, when the WRNMMC FOIA Office provided documents highlighting chain of commands. Plaintiff's Ex B-11 003-012, ECF Document 24-12, pp. 3-12. These email documents show where the quarterly reports were sent. For example, the FOIA reporting chain of command on October 10, 2013, which was after the start of FY14 reporting, would go to Nadine Brown at DHA. Plaintiff's Ex B-11 007, 012, ECF Document 24-12, pp. 7, 12. In the March 9, 2017 correspondence, I told Plaintiff, "DONFOIA/BUMED was the WRNMMC FY13 FOIA reporting chain before the chain became Defense Health Agency." ECF Document 24-12, p. 1.

20. In consideration of Plaintiff's suggestion of records detailed in Plaintiff's Brief at 22 note 12 (b), "records

10

relating to guidance to the Agency regarding transition of WRNMMC to a Command under DHA beginning on October, 1, 2013 (FY 2014)," the WRNMMC FOIA Office conducted an additional search for responsive records on May 18, 2017.  We will provide Plaintiff documents that relate to the establishment of DHA .  These include Department of Defense Directive 5136.13  Defense Health Agency (DHA)(30 Sept 2015); Memorandum, Deputy Secretary of Defense, SUBJECT: Planning for Reform of the Governance of the Military Health System, 2 March 2012; Memorandum, Deputy Secretary of Defense, SUBJECT: Implementation of Military Health System Governance Reform, 11 March 2013; National Capital Region (NCR) Medical Directorate Concept of Operations; Memorandum, Director, DHA, SUBJECT: Legal Effect of Joint Task Force Guidance after October 1, 4 October 2013; Department of Defense Instruction 5015.02 DoD Records Management Program (24 Feb 2015); and DHA Organization Chart 2014.  These materials were provided upon my request by a member of the DHA Office of the General Counsel who regularly maintained these files about the establishment of the DHA in his office computer files.  The materials demonstrate the chain of command relationship of DHA and its subordinate military treatment facilities including WRNMMC.  They are responsive to Plaintiff's request.

21.  There should be no ambiguity WRNMMC falls under the DHA reporting Chain of Command.

### D. Request for WRNMMC FOIA Office Tracking numbers (Amended Complaint, paragraph 82; Plaintiff's Brief, paragraph II(C))

22. By letter dated April 26, 2014, Plaintiff submitted a FOIA Request for WRNMMC FOIA tracking numbers and dates pertaining to FOIA requests listed on an attachment to his request. Plaintiff's Ex 5, 027-30.

23. On July 28, 2014, WRNMMC FOIA Office responded with "No Records(s) for your request as stated." Plaintiff's Ex 5 - 018; ECF Document 1-3, p. 19. (WRNMMMC Case #14-43). The WRNMMC FOIA Office further explained, "You have WRNMMC tracking numbers in all but 10 of your 39 listings on your chart. In the 10 listings that do not have WRNMMC tracking numbers, it is difficult to decipher which of our tracking numbers to assign as all 10 of your listings have the same requested information that were asked and answered already within our search for all of your medical records." Plaintiff's Ex. 5, 018-19. The reason for this response was because Plaintiff's request was interpreted as seeking tracking numbers for requests listed on the attachment that had no number next to them. I did not realize that the other numbers were not WRNMMC tracking numbers but Plaintiff's numbers that he had assigned to his requests. The only documents that would be responsive to this request would be the letters sent to Plaintiff with tracking numbers in

12

response to his FOIA requests, which he had already received, or the FOIA Log, a copy of which he has also received. The ten cases on Plaintiff's list without tracking numbers were all for medical records, and were duplicative to records provided when Plaintiff asked for "All Medical Records in WRNMMC possession at the time of the FOIA request" on March 29, 2011. Plaintiff's Ex. 5, 015, 021; ECF Document 1, p. 16, 22 of 132.[3]

24. With respect to the requests on Plaintiff's attachment that had no number assigned by Plaintiff, the WRNMMC FOIA Office did not assign separate tracking numbers to each of Plaintiff's FOIA requests. The WRNMMC FOIA Office combines FOIA requests for purposes of assigning a tracking number. The case combining Plaintiff's request for medical records was given a tracking number of WRNMMC FOIA Case # 14-43 and the response was provided to these requests to Plaintiff on or about July 24, 2014. Plaintiff's Ex. 5 018; ECF Document 1, p. 19 of 132. The WRNMMC FOIA office informed Plaintiff the ten cases had been "asked and answered" on or about August 19, 2014. Plaintiff's Ex. 14. 010; ECF Document 1-5, p. 11. Regardless of whether Plaintiff objected to consolidation of multiple FOIA requests under one tracking number, the WRNMMC FOIA office did provide the medical records he requested.

---

[3] Plaintiff made fifteen separate FOIA requests on June 29, 2013. On appeal Plaintiff was also dissatisfied with tracking numbers provided. See ex. Ex. 5 05-09; ECF Document 1-3, p. 6-9 (WRNMMC FOIA Office tracking numbers were "incorrect;" and "I do not accept this tracking number").

13

25. The WRNMMC FOIA Office's submission of the FY13 FOIA Log includes a full list of tracking numbers for Plaintiff's FOIA requests and the dates they were received. Plaintiff specifically identified the WRNMMC's FOIA tracking Logs as agency records which would be responsive to this request. Plaintiff's Brief at 25; ECF Document 24-1, p. 32.

**E. Request for Documents Related to the Original 2012 Medical Records DVD chain of custody; disc label images of the Original 2012 Medical Records DVD and 2013 Copy thereof; and Plaintiff's Certified Mail with Tracking Numbers 70121640 0000 9665 1035 and 7012 1640 0000 9665 4524. (Plaintiff's Brief, paragraph II(D))**

**Original 2012 Medical Records DVD chain of custody**

26. In 2012 Plaintiff gave to Judy Logeman at the WRNMMC a DVD containing copies of his medical records ("Original 2012 DVD"), with printed markings reading "Medical records for Judy" and "HIPPA". On November 19, 2013, at Plaintiff's request, I sent him a copy of the Original 2012 DVD. Any claim the WRNMMC FOIA Office sent Plaintiff the Original 2012 DVD of his medical records on November 19, 2013, is incorrect. Complaint ¶ 65; ECF Document 24-9, p. 1-3; Plaintiff's Brief at 32, ECF Document 24-1, p.19. I retain the Original 2012 DVD of his medical records in the WRNMMC FOIA Office.

27. There is no written documented chain of custody for the Original 2012 DVD Plaintiff gave to Judy Logeman. I thoroughly searched for records or correspondences showing

14

anything related to the transfer of the Original 2012 DVD between WRNMMC parties. I searched all my files on my computer and my emails.[4] I am the only person who would retain these emails. I searched my emails for the correspondences with Judy Logeman or Thurman McCall and found none. Mr. McCall was a records technician and Judy Logeman gave him the Original 2012 DVD. Mr. McCall informed me that he had no records concerning the chain of the custody of Plaintiff's Original 2012 DVD. I had no emails with Mr. McCall or Judy Logeman concerning this DVD. My best recollection was Mr. McCall called me to notify me he had a DVD from Plaintiff and he delivered the DVD by hand. The DVD movement was entirely within the normal course of business. The Original 2012 DVD went from Judy Logeman to the Medical Records office, who then delivered it to me. Plaintiff's Ex. 15, 02; ECF Document 1-5, p. 18; Plaintiff's Brief at 18 note 17, ECF Document 24-1, p. 36. The WRNMMC FOIA Office retains the Original 2012 DVD in Plaintiff's FOIA file. After a thorough search, there are no chain of custody records to provide Plaintiff, therefore, no information has been withheld from him in connection with this request.

---

[4] Second Bizzell Declaration ¶ 22 references an email requesting a search on May 23, 2014, and subsequent phone calls on May 30, 2014. Copies of the email and located receipts will be released to Plaintiff. Note, the email discussed Plaintiff's FOIA request WRNMMC-#R, an alleged Privacy Act violation, but the attachment to the email referenced Plaintiff's requests for the "Chain of Custody" of a DVD. The contacts on May 30 were telephonic. No notes or records were created in connection with them.

15

### Disc Label images of the Original 2012 Medical Records DVD and 2013 Copy

28.   On April 26, 2014, Plaintiff requested photocopies of the disk labels of the Original 2012 DVD and the copy made by WRNMCC in 2013. Plaintiff's Ex. 17, 005. Plaintiff disputes the WRNMMC FOIA Office gave him true and accurate copies of disc label images of various copies of a DVD of his medical records; he believes the DVD he received on or about November 19, 2013, resembled and, therefore, must have been the Original 2012 DVD; and he believes the DVD he mailed back unsolicited and subsequently lost, was his Original 2012 DVD. Plaintiff's Brief at 30-32, ECF Document 37-39.

29.   Plaintiff is incorrect. The WRNMMC FOIA Office presently has three DVDs on file. The Original 2012 DVD has a front disk label that is the image at Plaintiff's Ex. 17, 011. I hand-wrote the words "Patient: Robert Hammond" on the Original 2012 DVD after I received it. On June 29, 2013, Plaintiff asked for a copy of the Original 2012 DVD. Plaintiff's Ex. 17, 005. The front label of that copy, which was a new label made for that copy, is at Plaintiff's Ex. 17, 008. The copy's label is marked "FOIA #14-08 Hammond #13-06 because those were the referenced FOIA requests for the copy of the DVD. There is a third DVD labeled "Robert Hammond" (top of DVD) and "Physicians Notes," "Nursing Shift Notes," "Nursing

Notes," and "Past Hospitalizations" (bottom of DVD, the image at Ex. 17 012  The third DVD is not at issue in this case. Plaintiff's Ex. 17, 002, ECF Document 1-5, p. 39 (Plaintiff said, "I am not appealing this image").

30. Notwithstanding Plaintiff's disagreement, the WRNMMC FOIA Office provided responsive information with the DVD images. There is no further information to be provided.

### Certified Mail with Tracking Numbers 70121640 0000 9665 1035 and 7012 1640 0000 9665 4524

31. Plaintiff alleges two packages he mailed to the WRNMMC FOIA Office were lost by the WRNMMC. The two packages had USPS tracking numbers 7012 1640 0000 9665 1035 and 7012 1640 0000 9665 4524, respectively. Plaintiff's Brief at 32, ECF Document 24-1, p. 39. He alleges the package with USPS tracking number 7012 1640 0000 9665 1035 contained the DVD he lost in the mail. Plaintiff's Brief at 32 note 20, ECF Document 24-1, p. 39; Ex. 18, 004, ECF Document 1-5, p. 64. Plaintiff submits a signed USPS Form 3811 Domestic Return Receipt from the WRNMMC as evidence that the WRNMMC received one of his lost packages. Plaintiff's Ex. 5-3, ECF Document 24-4. The signed return receipt had USPS tracking number 7012 1640 0000 9665 4524, not the package Plaintiff alleges contained the DVD he mailed unsolicited to the WRNMMC. Plaintiff never explained what the package ending in #4524

17

contained. Further, citing a paper of scrawled notes, Plaintiff claims a USPS employee told him that the WRNMMC confirmed receipt of his package. Plaintiff's Brief at 33, Document 24-1, p. 40; Ex B-4; ECF Document 24-5, p. 1. Plaintiff submits additional paperwork from the USPS, but none of the documentation confirms delivery to the WRNMMC in Bethesda, Maryland. Ex B-4, ECF Document 24-5, p. 1-7. He submits a correspondence from Teri Smith, USPS, on 8/10/2016, were she explained records of his packages have dropped off their tracking system. Plaintiff's Ex B-6; ECF Document 24-7, p. 1.

32. Plaintiff filed an appeal ostensibly searching for confirmation his packages were received. Plaintiff's Ex. 18. The WRNMMC FOIA Office knew he was searching for confirmation of the packages delivery. Plaintiff clarifies he did not seek the packages themselves in his FOIA request, but requested "records about the packages, including those generated by and during the search for the packages. Any search for the packages themselves was therefore incidental to the actual FOIA request." Plaintiff's Brief at 33, Document 24-1, p. 40. In his FOIA appeal on August 16, 2014, Plaintiff posited suggestions for records demonstrating a search for his missing packages. Plaintiff's Ex. 18, 003-004. The WRNMMC FOIA Office conducted extensive searches for the packages. Second Bizzell Declaration

18

¶¶ 29, 30, 32, 33.[5] The search efforts were reasonably calculated to find the actual packages, which were addressed to me, Judy Bizzell. If the package was located, it would have been in the WRNMMC post office or delivered directly to me. Records suggested by Plaintiff would not be reasonably calculated to locate the package. I contacted Ms. Meki Gulley, WRNMMC Post Office supervisor again on May 22, 2017. She acknowledged receipt of Plaintiff's Exhibit 5-3, UPS tracking number 7012 1640 0000 9665 4524, but did not have the package and had no paper record. She never found USPS tracking number 7012 1640 0000 9665 1035. Her email record will be released. To date, over three years after his mailing, we have not located either package.

33. All reasonably segregable, non-exempt information has been released. With respect to the FOIA requests that are at issue in this litigation, no responsive records are being withheld from Plaintiff, with the exception of Exemption (b)(6) information consisting of names. No further information can be segregated and released from the limited information currently being withheld.

III. Conclusion

---

[5] Second Bizzell Declaration ¶ 28, 31, 32 contain an incomplete listing of the tracking number of one mailing certificate. The certificate should read "7012 1640 0000 9665 4524."

34. For the foregoing reasons, the WRNMMC FOIA Office has lawfully provided information in response to Plaintiff's FOIA requests, withheld limited information pursuant to Exemption (b)(6), or accurately responded where no information was available after having conducted reasonable searches to find the information sought.

* * *

I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed this 23rd day of May 2017.

/Judy J. Bizzell
Government Information Specialist
WRNMMC, Bethesda, Maryland