**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

**ROBERT HAMMOND,**

     *Plaintiff*,

    **v.**

**DEPARTMENT OF DEFENSE,** *et al.*,

     *Defendants*.

**Civil Action No. 16-421 (FYP)**

---

## <u>MEMORANDUM OPINION</u>

Between April and May of 2014, Plaintiff Robert Hammond submitted eight requests under the Freedom of Information Act ("FOIA"), *see* 5 U.S.C. § 552, to the Walter Reed National Military Medical Center ("Walter Reed" or "WRNMMC") and the Navy Bureau of Medicine and Surgery ("BUMED").  Dissatisfied with the responses that he received, Hammond filed the instant suit against Walter Reed and its two overseeing agencies, the Defense Health Agency ("DHA") and the Department of Defense, alleging that Walter Reed failed to conduct adequate searches and improperly invoked FOIA Exemption 6 to withhold certain information. Hammond brings a separate claim under the Privacy Act, *see* 5 U.S.C. § 552a, alleging that Walter Reed has not properly safeguarded his medical information.  Before the Court are the parties' dueling motions for summary judgment.  For the reasons set forth below, the Court will grant Defendants' Motion for Summary Judgment and will deny Plaintiff's Cross Motion for Summary Judgment.

### BACKGROUND

Between April and May of 2014, Hammond submitted eight FOIA requests to Walter

Reed or BUMED.  *See* ECF No. 12 (Amended Complaint), ¶¶ 56, 68, 82, 99, 107, 115, 121, 136.

All eight of these requests remain in dispute.  *See* ECF No. 50 (Defendants' Amended Renewed

Motion for Summary Judgment) at 2–16; ECF No. 61 (Plaintiff's Motion for Summary Judgment

and Opposition) at 12–28.[1]

       1.      <u>FY 2013 Walter Reed Annual FOIA Report to BUMED</u>

Hammond submitted his first FOIA request on April 1, 2014, asking for Walter Reed's

FY 2013 Annual Freedom of Information Act Report as it was received by BUMED including

"all enclosures and any raw data."  *See* ECF No. 50-2 (Third Bizzell Declaration), ¶ 4.  BUMED

determined that it was not the appropriate office to handle this request because Walter Reed

"does not forward [its] reports to BUMED."  *See* Am. Compl., ¶ 57.  BUMED therefore

transferred Hammond's request to Walter Reed on April 15, 2014.  *Id.*

On August 19, 2014, Walter Reed initially informed Hammond that his request had been

"denied under Exemption B5" as an inter-agency/intra-agency document.  *See* ECF No. 50-1

(Second Bizzell Declaration), ¶ 5.[2]  Walter Reed thereafter "voluntarily withdrew the (b)(5)

objections" when DHA published its 2013 Annual FOIA Report on March 9, 2017, which

detailed all FOIA requests made of Walter Reed during the relevant period.  *See* Third Bizzell

Decl., ¶ 6.  At that time, Walter Reed provided Hammond with access to the final report, as well

as its 2013 FOIA Processing Log, which Walter Reed had transmitted to DHA for inclusion in

---

[1]     Page-number citations to Plaintiff's Motion for Summary Judgment refer to the page numbers that the Court's Electronic Filing System automatically assigns.

[2]     FOIA Exemption 5 protects "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency."  *See* 5 U.S.C. 552(b)(5).  The file that Walter Reed submitted to DHA was "not a final report," and Walter Reed thus took the position that it was protected from disclosure as a pre-decisional, deliberative document.  *See* Second Bizzell Decl., ¶ 5; Third Bizzell Decl., ¶ 6; *see also Judicial Watch, Inc. v. Dep't of Def.*, 847 F.3d 735, 739 (D.C. Cir. 2017) (noting the Exemption 5 protects agency documents that are "generated before the adoption of an agency policy," and "reflect the give-and-take of the consultative process" (citation omitted) (cleaned up)).

the final report.  *Id.*  The FOIA Processing Log lists all the FOIA and Privacy Act requests received by Walter Reed during Fiscal Year 2013, noting the name of the requester, the information requested, the date of the request, as well as the FOIA tracking number and the status of the request.  *See* ECF No. 24-12 (FOIA Processing Log).  When Walter Reed provided the FOIA Processing Log to Hammond, the agency redacted "the names of certain individuals requesting access to [their] medical records" under FOIA Exemption 6.  *See* Third Bizzell Decl., ¶ 9.[3]

      2.      <u>FY 2013 Quarterly Privacy Act Report Submissions to BUMED</u>

On April 11, 2014, Hammond made a second FOIA request, asking BUMED for Walter Reed's "FY 2013 Quarterly Privacy Act Report Submissions" as they were received by BUMED, "including any raw data."  *See* Third Bizzell Decl., ¶ 12; Am. Compl., ¶ 68.  Walter Reed notes that Privacy Act requests are not tracked separately, but rather are entered into its FOIA Processing Log.  *See* Third Bizzell Decl., ¶ 13.  As a result, Walter Reed followed the same approach as it did in processing Hammond's first request:  The agency initially denied the request for inter-agency documents under Exemption (b)(5), *see* Second Bizzell Decl., ¶ 10; but on March 9, 2017, after the DHA's 2013 Annual FOIA Report was finalized, Walter Reed provided the final report and a redacted version of its 2013 FOIA Processing Log.  *See* Third Bizzell Decl., ¶ 14.  Walter Reed also provided an email from the account of its FOIA Officer, which "listed quarterly numbers of FOIA and Privacy Act requests."  *Id.*

      3.      <u>FOIA Tracking Numbers</u>

On April 26, 2014, Hammond submitted a third FOIA request, directly to Walter Reed, seeking Walter Reed's FOIA tracking numbers and dates that the requests were received for

---

[3]    Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  *See* 5 U.S.C. § 552(b)(6).

certain FOIA requests that were listed on an attached spreadsheet.  *See* Second Bizzell Decl.,

¶ 11; Am. Compl., ¶ 82.  The spreadsheet included 40 FOIA requests, made by Hammond

between February 2013 and January 2014.  *Id.*

According to Walter Reed, its FOIA Office did not assign separate tracking numbers to

each of Hammond's FOIA requests, but instead combined some of the requests for purposes of

tracking.  *See* Second Bizzell Decl., ¶ 12.  Walter Reed informed Hammond that the only

responsive documents that contained the tracking numbers were the letters that Walter Reed had

sent to him in response to his FOIA requests, all of which had already been provided.  *See* Third

Bizzell Decl., ¶ 23–24.  Hammond was also provided the FOIA Processing Log on March 9,

2017, in response to another request, and the Log includes a full list of tracking numbers.  *Id.*,

¶ 25.  As a result, Walter Reed did not transmit any additional records in response to this request.

4.     Documents Relating to Two Packages

On April 26, 2014, Hammond also requested records pertaining to two packages he

claims to have sent to Walter Reed on November 26, 2013, and January 27, 2014.  *See* Am.

Compl., ¶¶ 136–37; Second Bizzell Decl., ¶ 28.  Hammond provided two USPS certified mail

tracking numbers to identify the packages.  *Id.*

Over the course of the next several months, Walter Reed "conducted a comprehensive

search" to locate the two packages or any record of their receipt by Walter Reed.  *See* Second

Bizzell Decl., ¶¶ 29–32.[4]  On July 25, 2014, Walter Reed informed Hammond that it had found

no records regarding the two packages, and that it would close the matter.  *Id.*, ¶ 31.  Although

---

[4]     Walter Reed undertook a thorough search for the packages, inquiring repeatedly in the appropriate offices.
*See* Second Bizzell Decl., ¶ 30 ("On or about May 22, 2014, May 26, 2014, June 12, 2014, June 24, 2014, and July
15, 2014, the WRNMMC FOIA Office inquired about the packages and their mailing records with [the mail clerk]
(in person) and [the Post Office supervisor] (by phone).").

Walter Reed continued to look for the packages through November 6, 2015, it determined that the packages had never been received. *Id.*, ¶ 33.[5]

    5.    <u>Photocopies of 2012 and 2013 DVD Labels</u>

Also on April 26, 2014, Hammond requested that Walter Reed provide him with "photocopies of the disk labels of the Original 2012 DVD [of his medical records] and the copy made by WRNMCC in 2013." *See* Third Bizzell Decl., ¶ 28. This request refers to a DVD of Hammond's medical records that he provided to Walter Reed in 2012. *Id.* Hammond asked Walter Reed to send him a copy of the DVD, which Walter Reed did on November 19, 2013. *Id.* The original DVD was labeled "Patient: Robert Hammond" and the copy was labeled "FOIA #14-08 Hammond #13-06." *Id.*, ¶ 29. On July 25, 2014, Walter Reed sent Hammond a copy of the labels on both DVDs and informed him that the "matter [was] closed in this office." *See* Second Bizzell Decl., ¶ 26.

    6.    <u>Documents Relating to DVD Chain of Custody</u>

On April 28, 2014, Hammond sought additional records related to the DVD of his medical records. He requested "the chain of custody of that DVD including emails or other documents related to the transfer of the DVD to the Medical Records Department, to the FOIA office, to personnel copying the DVD, back to the FOIA office and to mailing." *Id.*, ¶ 20. Walter Reed searched for records responsive to this request but found none. *Id.*, ¶ 22 ("[Walter Reed] sent an email to approximately nine WRNMCC employees [Hammond] identified as possibly having knowledge . . . . The employees had searched their records and found no

---

[5]    Hammond disputes this, claiming that "USPS confirmed with [] the Walter Reed Mail Room Manager, that both packages were received by Walter Reed and released to [] the Walter Reed FOIA Office mail orderly." *See* Am. Compl., ¶ 138. As discussed, *infra*, the Court need not determine whether the packages actually were received, but only whether Walter Reed conducted an adequate search for records about the whereabouts of the packages.

responsive records.").  On July 25, 2014, Walter Reed informed Hammond that it could locate no

responsive records and closed the matter.  *Id.*, ¶ 25.

> 7.     Reporting Chains of Command

On May 6, 2014, Hammond sent another FOIA request to Walter Reed, asking for "the

WRNMCC FY 2013 and FY 2014 reporting Chain of Command for the FY 2013 and FY 2014

FOIA Reports and the FY 2013 and FY 2014 Quarterly Privacy Act Reports to Congress"  *Id.*,

¶ 14.

In its initial response on August 18, 2014, Walter Reed provided Hammond "with the full

name and address of the Defense Health Agency Office, which is the office that the WRNMCC

reports to with respect to FOIA and Privacy Act reports."  *Id.*, ¶ 15.  Hammond appealed,

arguing that Walter Reed provided only a "misleading, incomplete" statement and released no

documents relating to their reporting chains.  *Id.*, ¶ 16.  In his appeal, he included a detailed list

of suggested records that would meet his request, which Walter Reed used to search for

additional responsive records; it provided those records to Hammond on March 9, 2017.  *See*

Third Bizzell Decl., ¶ 19.[6]  In addition, supplemental records responsive to this request have

been turned over to Hammond during the course of this litigation.  *Id.*, ¶ 20.[7]

---

[6]     Specifically, Bizzell avers:

> Plaintiff's suggestion of records . . . were addressed on March 9, 2017, when the [] FOIA
> Office provided documents highlighting chain of commands.  These email documents show
> where the quarterly reports were sent.  For example, the FOIA reporting chain of command
> on October 10, 2013, which was after the start of FY14 reporting, would go to Nadine
> Brown at DHA.  In the March 9, 2017 correspondence, I told Plaintiff,
> "DONFOIA/BUMED was the WRNMMC FY13 FOIA reporting chain before the chain
> became Defense Health Agency."

*See* Third Bizzell Decl., ¶ 19 (internal citations omitted).

[7]     According to Bizzell, Hammond has been provided with the following documents:

> Department of Defense Directive 5136.13 Defense Health Agency (DHA) (30 Sept 2015);
> Memorandum, Deputy Secretary of Defense, SUBJECT: Planning for Reform of the

8.    Individualized Tracking Numbers for 20 FOIA Requests

Hammond's final FOIA request, submitted on May 25, 2014, sought "(1) records of the official Walter Reed agency-assigned FOIA case tracking numbers of twenty other of his FOIA requests" submitted between April 26, 2014, and May 6, 2014; and "(2) records of the dates that Walter Reed recorded receiving the requests at issue therein."  *See* Am. Compl., ¶ 107.  With respect to this request, Walter Reed again notes that the tracking numbers and dates of receipt that correspond to Hammond's FOIA requests are contained in the responsive letters sent to Hammond by Walter Reed; and also are in the FOIA Processing Log.  *See* ECF No. 50-3 (Fourth Bizzell Declaration), ¶ 15; *see also* Second Bizzell Decl., ¶ 19 (explaining that Walter Reed informed Hammond by letter dated July 24, 2014, that his requests had been "asked and answered" as part of previous communications).  Because Walter Reed had already given Hammond those documents, Walter Reed "did not re-release" the records, but agreed to make them available to Hammond upon request.  *See* Fourth Bizzell Decl., ¶ 15.

Hammond brought the instant suit against the Department of Defense, the DHA, and Walter Reed on March 2, 2016, challenging the adequacy of Defendants' production of documents in response to his FOIA requests.  *See generally* Am. Compl.  Hammond also brings a claim that Walter Reed failed to safeguard the DVD of his medical records, in violation of the Privacy Act.  *See* Am. Compl., ¶¶ 257–65 (citing 5 U.S.C. § 552a, *et seq.*).

---

Governance of the Military Health System, 2 March 2012; Memorandum, Deputy Secretary of Defense, SUBJECT: Implementation of Military Health System Governance Reform, 11 March 2013; National Capitol Region (NCR) Medical Directorate Concept of Operations; Memorandum, Director, DHA, SUBJECT: Legal Effect of Joint Task Force Guidance after October 1, 4 October 2013; Department of Defense Instruction 5015.02 DoD Records Management Program (24 Feb 2015); and DHA Organization Chart.

*See* Third Bizzell Decl., ¶ 20.

**LEGAL STANDARD**

FOIA "was enacted to facilitate public access to Government documents" in order to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Dep't of State v. Ray*, 502 U.S. 164, 173 (1991) (internal quotation marks and citation omitted). Thus, under FOIA, an agency is required to conduct a reasonable search for records, *see Muckrock, LLC v. CIA*, 300 F. Supp. 3d 108, 118–19 (D.D.C. 2018), and it must produce all responsive documents to the requester, unless the agency is entitled to withhold the records pursuant to any of the nine exemptions that are specified in FOIA, *see* 5 U.S.C. § 552(b); *see also Judicial Watch, Inc. v. Dep't of Treasury*, 796 F. Supp. 2d 13, 23 (D.D.C. 2011).

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Judicial Watch, Inc. v. Dep't of the Navy*, 25 F. Supp. 3d 131, 136 (D.D.C. 2014) (quoting *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009)). Rule 56 of the Federal Rules of Civil Procedure requires that a court grant a motion for summary judgment where the pleadings, disclosure materials on file, and affidavits "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a); *see also Judicial Watch*, 25 F. Supp. 3d at 136 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986)). In the FOIA context, a district court conducts a de novo review of the record when evaluating a motion for summary judgment, and the responding federal agency bears the burden of proving that it has complied with its obligations under FOIA. *See* 5 U.S.C. § 552(a)(4)(B); *In Def. of Animals v. NIH*, 543 F. Supp. 2d 83, 92–93 (D.D.C. 2008).

When a plaintiff challenges the adequacy of an agency's search for records responsive to a FOIA request, the court applies a reasonableness test, and it may grant summary judgment to the agency based on information provided in "[a] reasonably detailed affidavit, setting forth the

search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Valencia–Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999) (citation omitted).  Such agency affidavits attesting to a reasonable search "are afforded a presumption of good faith," and "can be rebutted only 'with evidence that the agency's search was not made in good faith.'"  *Defs. of Wildlife v. Dep't of Interior*, 314 F. Supp. 2d 1, 8 (D.D.C. 2004) (quoting *Trans. Union LLC v. FTC*, 141 F. Supp. 2d 62, 69 (D.D.C. 2001)).

Likewise, "[a]n agency withholding responsive documents from a FOIA release bears the burden of proving the applicability of [the] claimed exemptions," and such a showing is typically made in agency affidavits.  *ACLU v. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir 2011).  Entry of summary judgment regarding an agency's invocation of FOIA exemptions is appropriate when the agency's affidavit "describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith."  *Id.*

## ANALYSIS

Hammond brings claims under both FOIA and the Privacy Act.  In contesting Walter Reed's responses under FOIA, Hammond argues (1) that Walter Reed conducted an inadequate search in response to his FOIA requests, *see* Pl. Mot. at 12–28; (2) that Walter Reed improperly invoked Exemption 6 to redact the names of individual requesters in response to two of his FOIA requests, *id.* at 12–13; and (3) that he is entitled to equitable relief for Walter Reed's failure to assign individual tracking numbers to his many FOIA requests, *id.* at 19, 21.  Hammond also argues that Walter Reed violated the Privacy Act by failing to maintain continuous custody of

the DVD containing his medical records.  *See* Pl. Mot. at 28–35.

**I.      FOIA**

      A.      <u>Adequacy of Search</u>

Under FOIA, an agency is only required to conduct a reasonable search and to provide non-exempt responsive information.  *See Muckrock*, 300 F. Supp. 3d at 119–20.  Although Hammond presents a litany of complaints regarding Defendants' responses to his FOIA requests, *see generally* Pl. Mot., those complaints are beside the point because they do not address Defendants' obligations under the statute.  Applying a presumption of good faith to Walter Reed's declarations, *see Defs. of Wildlife*, 314 F. Supp. 2d at 8, the Court must agree with Defendants that they have met their statutory obligations under FOIA to respond to Hammond's many requests.

In support of its Motion for Summary Judgment, Defendants have submitted declarations from Walter Reed's FOIA Officer, Judy Bizzell.  *See* Exhibits to ECF No. 50 (Defs. Mot.).  The Bizzell declarations demonstrate that Walter Reed conducted searches "reasonably calculated to uncover all relevant documents" for each of Hammond's requests.  *See Weisberg v. DOJ*, 705 F.2d 1344, 1351 (D.C. Cir. 1983); *see* Second Bizzell Decl., ¶¶ 7, 10, 22–24, 29–33; Third Bizzell Decl., ¶¶ 6–7, 13–14, 19–20, 27, 29, 32.  In particular, where records did not exist in the form requested by Hammond — *i.e.*, as "reports" from Walter Read to BUMED, as specified in his first two requests — Walter Reed interpreted the requests broadly and provided Hammond with relevant information, in the form of the final DHA FOIA report and the FOIA Processing Log.  *See Nation Mag., Washington Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995) ("[A]n agency [] has a duty to construe a FOIA request liberally." (citing *Truitt v. Dep't of State*, 897 F.2d 540, 544–45 (D.C. Cir. 1990))); Third Bizzell Decl., ¶¶ 6–7, 13–14 (noting that

Walter Reed does not submit a FOIA or Privacy Act Report to BUMED, but submits only its FOIA Processing Log, which was provided to Hammond).[8]

Furthermore, where Hammond was already in possession of the information requested or where requested records did not exist — as with respect to his third, fourth, sixth and eighth requests — Walter Reed informed him of those facts and provided detailed explanations to support its responses.  *See* Second Bizzell Decl., ¶¶ 12, 19, 22–24 (Hammond already possessed tracking numbers that were the subject of third and eighth requests); *id.*, ¶¶ 20, 27 (in response to sixth request, each person who might have been in DVD chain of custody searched records but found no responsive documents); *id.*, at ¶¶ 18, 31–32 (after performing a comprehensive search, no records of the packages were found in response to fourth request); *see also* Fourth Bizzell Decl., ¶¶ 15 (discussing eighth request), 16 (discussing sixth request), 18 (discussing fourth request).

And finally, where Hammond requested copies of DVD labels and documents related to the agency's chain of command — in his fifth and seventh requests — Walter Reed performed reasonable searches and provided responsive documents to Hammond.  *See* Second Bizzell Decl., ¶¶ 26–27 (describing Walter Reed's search in response to Hammond's fifth request and provision of copies of the DVD labels); Third Bizzell Decl., ¶¶ 19–20 (describing the search performed in response to Hammond's seventh request regarding reporting chain of command and the documents provided).[9]

---

[8]     Although Hammond argues that Walter Reed improperly invoked FOIA Exemption 5 to initially withhold the FY 2013 FOIA Processing Log, *see* Pl. Mot. 12, the agency ultimately changed its position and provided the Log to Hammond.  When the government releases a contested record while a FOIA action is pending, the release "moots the question of the validity of the original exemption claim."  *Armstrong v. Exec. Office of the President,* 97 F.3d 575, 582 (D.C. Cir. 1996).

[9]     Hammond's specific criticisms about Walter Reed's search in response to his seventh request — for information about the "chain of command for the Annual FOIA Report Submission to Congress and the Quarterly Privacy Report submissions" — are unfounded.  *See* Pl. Mot. at 19.  He contends that "[n]othing . . . gives any

Hammond's challenges to the adequacy of the searches performed by Walter Reed are largely rooted in dissatisfaction with the information that he received. *See, e.g.*, Pl. Mot. 14–16 (arguing with respect to his first request that the "actual reports [he requested] have not been provided" and that additional reports exist); 20 (protesting that no responsive documents have been released in response to his seventh request); 23 (contending that Walter Reed "[has] not produced the chain of custody records" he believes respond to his sixth request); 24 (noting that he "has yet to receive . . . information" about the DVD's movement within Walter Reed); 25 (complaining with respect to his fifth request that records were not provided, despite Walter Reed's representation that no such records exist) (asserting that provided records are inaccurate). This series of arguments betrays a fundamental misunderstanding of Walter Reed's obligations under FOIA. A FOIA requester is not guaranteed provision of specific records, but only a reasonable search as guided by their request. *See Canning v. Dep't of State*, 346 F. Supp. 3d 1, 13 (D.D.C. 2018). Moreover, "the adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) (citation omitted). As discussed, *supra*, Walter Reed used appropriate methods to carry out its searches.

Hammond also makes related arguments that Defendants failed to search as thoroughly as he would have preferred. For example, he complains that Defendants did not attempt to conduct

---

indication that [Walter Reed's] search . . . addressed or acknowledged either (a) BUMED and its reporting chain or (b) DHA's reporting chain 'through . . . to the Department of Defense.'" *Id.* at 20. In response to this request and follow-up communications with Hammond, Walter Reed reasonably searched for information about where it had sent its reporting information and provided Hammond with emails that show that the agency sent that information to DHA in Fiscal Year 2014. *See* Third Bizzell Decl, ¶ 19 ("These email documents show where the quarterly reports were sent. For example, the FOIA reporting chain of command on October 10, 2013, which was after the start of FY14 reporting, would go to Nadine Brown at DHA."). Furthermore, Bizzell informed Hammond that BUMED was the "reporting chain" in Fiscal Year 2013. *Id.* ("In the March 9, 2017 correspondence, I told Plaintiff, 'DONFOIA/BUMED was the WRNMMC FY13 FOIA reporting chain before the chain became Defense Health Agency.'").

searches at BUMED in response to his first two requests, *see* Pl. Mot. 16; and that they did not

conduct searches in response to his seventh request that would show the chain of command

"through . . . to the Department of Defense," *id.* at 20.  These arguments are simply a demand

that Defendants search more and find more.  But Hammond is not entitled to a search of his own

choosing.  *See Muckrock*, 300 F. Supp. 3d at 124 (noting that the role of the court is to evaluate

only "the appropriateness of the methods used to carry out the search" (citation omitted)).

Defendants' methodology in conducting the searches "must only be reasonable; it need not be

exhaustive."  *Id.* at 119 (citing *Oglesby v. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990));

*see also Meeropol v. Meese*, 790 F.2d 942, 956 (D.C. Cir. 1986) (holding that "a search need not

be perfect, only adequate").  As discussed, *supra*, the searches conducted by Walter Reed were

reasonable and adequate.

Finally, Hammond appears to take issue with some of the information in the Bizzell

declarations, arguing that that they contain "contradicting" facts and "inconsistenc[ies]."  *See* Pl.

Mot. at 15, 17–18, 26–27.[10]  Hammond's assertions fail to raise a "substantial doubt" about the

adequacy of the agency's search and the veracity of its declarations.  *Iturralde*, 315 F.3d at 314

(quoting *Valencia-Lucena*, 180 F.3d at 326).  He fails to cite any specific evidence that rebuts the

presumption of good faith that the Court must afford agency declarations.  *SafeCard Servs., Inc.

v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (noting that the presumption cannot be overturned

by "purely speculative claims" (citation omitted)).

For the foregoing reasons, the Court will grant Defendants' Motion for Summary

Judgment with respect to the adequacy of Walter Reed's searches for information responsive to

---

[10]      Specifically, Hammond complains about affidavits that "conflict and are not credible" with respect to
alleged alterations in the responses to his first two requests, *see* Pl. Mot. at 15; "conflicting" statements regarding
Privacy Act submissions, *id.* at 17–18; and "contradicting factual declarations" with respect to Walter Reed's failure
to locate responsive records concerning the two packages he claims to have sent the agency, *id.* at 26–27.

Hammond's requests.

    B.    <u>Exemption 6</u>

Hammond also challenges the application of FOIA Exemption 6 to withhold some information from responsive documents related to his requests for Walter Reed's 2013 FOIA and Privacy Act reports. *See* Pl. Mot. at 12–13. As previously discussed, Walter Reed provided Hammond with DHA's final, published Fiscal Year 2013 Annual FOIA report, along with Walter Reed's FOIA Processing Log, which contains all of the FOIA and Privacy Act requests received by Walter Reed for 2013. *See* Third Bizzell Decl., ¶¶ 6, 14. When Walter Reed provided the Processing Log to Hammond, it redacted "the names of certain individuals requesting access to [their own] medical records," invoking Exemption 6. *Id.* at ¶ 9. Exemption 6 permits the withholding of "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." *See* 5 U.S.C. § 552(b)(6).

Defendants argue that Walter Reed "properly applied Exemption 6 to protect substantial privacy interests of individuals who made either FOIA or Privacy Act requests to the agency." *See* Defs. Mot. at 3. In their view, "[b]ecause Walter Reed is a medical facility and employer, its running list of FOIA and Privacy Act requests . . . should be, at a minimum, considered a medical or similar file." *Id.* at 4. Hammond counters that the names of FOIA "requesters are generally not the type of information protected by" Exemption 6, and that he is not seeking the underlying medical records of the requesters. *See* Pl. Mot. at 13. Further, Hammond contends that "Defendants released the names of FOIA requesters in response to" his previous requests for annual FOIA reports and that Defendants have "failed to properly address [the] inconsistent stance which puts in question any reasoning in the withholding." *Id.*

Courts generally follow a two-step process when considering withholdings or redactions pursuant to Exemption 6.  First, the Court determines whether the records are the type of personnel, medical, or similar files that the exemption covers.  *Long v. ICE*, 279 F. Supp. 3d 226, 243 (D.D.C. 2017) (citing *Am. Immigration Lawyers Ass'n v. Exec. Office for Immigration Rev.*, 830 F.3d 667, 673 (D.C. Cir. 2016)).  Second, if the records are of the type covered by the exemption, the Court proceeds to determine whether their disclosure "would constitute a clearly unwarranted invasion of personal privacy."  *See* 5 U.S.C. § 552(b)(6); *see also Dep't of Air Force v. Rose*, 425 U.S. 352, 382 (1976).

To begin, the Court finds that Walter Reed's FOIA Processing Log is "similar" to personnel or medical records within the meaning of Exemption 6.  "The Supreme Court has interpreted the term 'similar files' broadly so as 'to cover detailed Government records on an individual which can be identified as applying to that individual.'"  *Ayuda, Inc. v. FTC*, 70 F. Supp. 3d 247, 264 (D.D.C. 2014) (quoting *Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982)).  Indeed, "[t]he information in the file 'need not be intimate' for the file to satisfy the standard, and the threshold for determining whether information applies to a particular individual is minimal."  *Milton v. DOJ*, 783 F. Supp. 2d 55, 58 (D.D.C. 2011) (quoting *N.Y. Times Co. v. NASA*, 920 F.2d 1002, 1006 (D.C. Cir. 1990)).

Defendants argue that the FOIA Processing Log should be considered "a medical or similar file" because the information in the Log can be "identified as applying to [particular] individual[s]," and may reflect that those individuals have sought access to their medical records.  *See* Defs. Mot. at 4–5 (quoting *Wash. Post. Co.*, 456 U.S. at 602) (alteration in original); *see also* Third Bizzell Decl., ¶ 9 ("[T]he information withheld consists of the names of individuals

requesting access to [their own] medical records.").[11]  Based on Bizzell's description of the Log and the "broad construction" of the term "similar files" adopted by the Supreme Court, the Court agrees with Defendants that the FOIA Processing Log falls within the scope of Exemption 6.

The Court also agrees with Defendants that "disclosure would constitute a 'clearly unwarranted invasion of personal privacy.'"  *See* Defs. Mot. at 5.  This determination entails a two-prong analysis, *see Am. Immigration Lawyers Ass'n*, 830 F.3d at 673–74, whereby the Court first determines whether "disclosure would compromise a substantial, as opposed to a *de minimis*, privacy interest," *Nat'l Association of Home Builders v. Norton*, 309 F.3d 26, 33 (D.C. Cir. 2002) (internal quotation marks and citation omitted), and, if a substantial privacy interest is implicated, the Court proceeds to evaluate "whether the public interest in disclosure outweighs the individual privacy concerns," *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1230 (D.C. Cir. 2008) (citation omitted).  Notably, "the only relevant 'public interest in disclosure' to be weighed in this balance is the extent to which disclosure would serve the 'core purpose of [] FOIA,' which is 'contribut[ing] significantly to public understanding *of the operations or activities of the government*.'"  *Dep't of Defense v. FLRA*, 510 U.S. 487, 495 (1994) (emphasis in

---

[11]       Hammond does not address this aspect of Defendants' argument, contending solely that "the names and addresses of FOIA requesters are generally not the type of information protected by Exemption (b)(6)" and focusing on the inconsistent stance Defendants have taken in releasing the names of FOIA requesters. *See* Pl. Mot. at 13. Hammond's contention that the names and addresses of FOIA requesters are not generally protected is incorrect. Though "the disclosure of names and addresses is not inherently and always a significant threat to the privacy of those listed," *Nat'l Ass'n of Retired Fed. Empls. v. Horner*, 879 F.2d 873, 877 (D.C. Cir. 1989), "[i]ndividuals certainly have a privacy interest in avoiding 'unlimited disclosure' of their names and addresses," *Pavement Coatings Tech. Council v. U.S. Geological Surv.*, 436 F. Supp. 3d 115, 132 (D.D.C. 2019), *aff'd in part, rev'd in part and remanded*, 995 F.3d 1014 (D.C. Cir. 2021).  Indeed, in the context of Exemption 6, the Supreme Court has emphasized that "disclosure of records regarding private citizens, identifiable by name, is not what the framers of [] FOIA had in mind." *DOJ v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 756 (1989).
       Further, Hammond's focus on Walter Reed's inconsistent application of Exemption 6 to its FOIA logs is misplaced.  Hammond points to no authority establishing that an agency's previous release of a certain kind of information bars their invocation of an exemption to withhold that information going forward.  *See generally* Pl. Mot.  The purpose of Exemption 6 is to protect the privacy interests of individuals when those interests outweigh any public interests.  It would be contrary to this purpose if an agency were required to always release a category of information simply because it had done so before. *See Eil v. DEA*, 878 F.3d 392, 400 (1st Cir. 2017) ("[P]rior revelations of exempt information do not destroy an individual's privacy interest." (citation omitted))

original) (quoting *Reps. Comm.*, 489 U.S. at 775).

The well recognized exemption that applies to the disclosure of medical records is readily extended to Walter Reed's FOIA Processing Log.  *See Prison Legal News v. Lappin*, 780 F. Supp. 2d 29, 41 (D.D.C. 2011) ("[I]n the FOIA context, courts have repeatedly held that medical records are exempt from disclosure because '[t]he privacy interest in [medical records] is well recognized, even under the stringent standard of Exemption 6.'" (citation omitted)).  Persons who make requests under FOIA and the Privacy Act at Walter Reed surely have a personal privacy interest in information about the existence and location of their medical records, as well as when and how they chose to access those records.  Hammond's counterargument that his request "does not encompass the actual medical records" and therefore does not implicate any privacy interests, *see* Pl. Reply at 2, is unavailing.  Although the appearance of an individual's name on the FOIA Processing Log would not disclose the medical record, it would disclose that a particular individual has a medical record at Walter Reed and attempted to access that record, which are private details about an individual's medical care.  *See Jurewicz v. Dep't of Agric.*, 741 F.3d 1326, 1332 (D.C. Cir. 2014) (recognizing that in the Exemption 6 context "[a] substantial privacy interest is anything greater than a *de minimis* privacy interest" (quoting *Multi Ag*, 515 F.3d at 1229–30)).

Nor would disclosure of the identities of FOIA and Privacy Act requesters serve any substantial public interest.  Such information provides no insight into "what [the] government is up to," but rather constitutes "information about private citizens that . . . reveals little or nothing about an agency's own conduct."  *See Reps. Comm.*, 489 U.S. at 773 (citation omitted).  As Defendants point out, "[a]lthough there may be some legitimate public interest in the volume of FOIA and Privacy Act requests being handled by a sub-component of the Department of

Defense, there is no legitimate public interest in the names of the particular requesters in this context." *See* Defs. Mot. at 7.  Hammond has no response to this argument.  *See* Pl. Mot. at 12–13; Pl. Reply at 3–4.  Under the circumstances, the Court finds that Walter Reed appropriately invoked Exemption 6 to redact the names of FOIA and Privacy Act requesters from its FOIA Processing Log.

C.  Equitable Relief

Hammond requests injunctive relief for alleged violations of FOIA related to Walter Reed's assignment of tracking numbers.  *See* Am. Compl., ¶¶ 232–33, 250–51; Pl. Mot. at 19, 21.  In Hammond's third and eighth FOIA requests, he requested the tracking numbers that Walter Reed assigned to his many FOIA requests.  *See* Third Bizzell Decl., ¶ 22; Fourth Bizzell Decl., ¶ 15.  In response, Walter Reed informed Hammond that the initial letters confirming his requests contained the relevant tracking numbers, some of which corresponded to multiple FOIA requests.  *See* Third Bizzell Decl., ¶ 23; Fourth Bizzell Decl., ¶ 15.  Hammond argues that the use of batched tracking numbers violates FOIA and asks the Court to "enjoin[]" Defendants from violating his "legal rights to be provided with an individualized tracking number for [each] FOIA request."  *See* Am. Compl., ¶¶ 233, 251; Pl. Mot. at 19, 21.  To support his argument, Hammond relies on 5 U.S.C. § 552(a)(7)(A), which states that each agency shall "establish a system to assign an individualized tracking number for each request received that will take longer than ten days to process and provide to each person making a request the tracking number assigned to the request."  *See* Pl. Reply at 7 (quoting 5 U.S.C. § 552(a)(7)(A)).

Hammond is correct that the D.C. Circuit has held that "FOIA imposes no limits on courts' equitable powers in enforcing its terms."  *Payne Enterprises Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988).  In other words, equitable relief is appropriate to "direct[] a

habitually noncompliant agency to comply" with the requirements of the statute.  *Muttitt v. U.S. Cent. Command*, 813 F. Supp. 2d 221, 227 (D.D.C. 2011).  Such remedies, however, are the exception, not the rule.  "[O]nly a rare instance of agency delinquency" warrants an injunction. *Am. Ctr. for L. & Just. v. Dep't of State*, 249 F. Supp. 3d 275, 286 (D.D.C. 2017) (quoting *Citizens for Responsibility & Ethics in Wash. v. DOJ*, 846 F.3d 1235, 1246 (D.C. Cir. 2017)).  In considering equitable relief, courts look for "sufficiently outrageous" conduct, *Am. Ctr. for L. & Just. v. Dep't of State*, 249 F. Supp. 3d 275, 281 (D.D.C. 2017) (citing *Payne*, 837 F.2d at 494), such that the agency is using "FOIA offensively to hinder the release of non-exempt documents." *Long v. IRS*, 693 F.2d 907, 910 (9th Cir. 1982).  Absent some evidence that Walter Reed is "deliberately trying to shirk its FOIA obligations" or "other ill intent," Hammond is not entitled to equitable relief.  *See Am. Ctr. for L. & Just. v. Dep't of State*, 289 F. Supp. 3d 81, 91 (D.D.C. 2018).  Here, the mere fact that Walter Reed assigns batched tracking numbers where the text of the statute requires "individualized tracking number[s]" is insufficient to demonstrate "ill intent" on the part of Walter Reed.

There is no indication that Walter Reed's use of batched tracking numbers prejudiced Hammond, or that the practice generally undermines the agency's ability to comply with FOIA. The statute indicates that the tracking-number requirement is intended to ensure that the agency, upon request, may "provide[] information about the status of a request to the person making the request using the assigned tracking number."  *See* 5 U.S.C. § 552(a)(7)(B).  As is clear from Hammond's many interactions with Walter Reed regarding his FOIA requests, Walter Reed has been able to give him information about the status of each of his requests using batched tracking numbers.  Thus, Walter Reed has in no way "shirk[ed] its FOIA obligations."  Further, the assignment of batched tracking numbers is not unique to Walter Reed; it appears to be a

commonplace administrative practice that cannot be considered "outrageous." *See, e.g.*, *Ford v. DOJ*, 208 F. Supp. 3d 237, 243 (D.D.C. 2016) (noting that multiple FOIA "requests were combined and assigned a single tracking number"); *Lasko v. DOJ*, 684 F. Supp. 2d 120, 126 (D.D.C. 2010), *aff'd*, No. 10-cv-5068, 2010 WL 3521595 (D.C. Cir. 2010) (noting an agency "combined the two requests and assigned a single tracking number"); *see also Am. Ctr. for L. & Just.*, 249 F. Supp. 3d at 281.[12]  Accordingly, the Court declines to award equitable relief for this alleged violation of FOIA.

## II.     Privacy Act

Finally, Hammond seeks summary judgment on his Privacy Act claim.  Hammond alleges that Defendants violated the Privacy Act by misplacing the DVD of his medical records that he provided to Walter Reed in 2012.  *See* Pl. Mot. at 29 ("Defendants failed to maintain the required continuous custody and control of the Original 2012 DVD of his medical records" and "admit that they could not locate the Original 2012 DVD in 2013.").  He contends that Walter Reed did not "safeguard the DVD under appropriate administrative, technical, and physical safeguards" in contravention of 5 U.S.C. § 552a(e)(10) and applicable DOD regulations.  *Id.*[13]

---

[12]     Hammond also cites to 5 U.S.C. § 552(a)(6)(B)(iv), which states that

> Each agency may promulgate regulations, pursuant to notice and receipt of public comment, providing for the aggregation of certain requests by the same requestor, or by a group of requestors acting in concert, if the agency reasonably believes that such requests actually constitute a single request, which would otherwise satisfy the unusual circumstances specified in this subparagraph, and the requests involve clearly related matters. Multiple requests involving unrelated matters shall not be aggregated.

In Hammond's view, this unequivocally forbids an agency from aggregating FOIA requests except under specific circumstances.  *See* Pl. Reply at 8.  The requirements of section 552(a)(6)(B)(iv), however, apply only to "unusual circumstances" where an agency may need extended time to complete a search due to the location or volume of records.  *See* 5 U.S.C. § 552(a)(6)(B)(iii).  As such, Hammond's reliance on this statutory text is inapposite.

[13]     According to Hammond, Defendants "have intentionally or willfully failed to adhere to the Privacy Act" and "governing DOD regulation regarding appropriate administrative, technical, and physical safeguards to insure the security and confidentiality of records and to protect against any anticipated threats or hazards to their security or integrity which could result in substantial harm, embarrassment, inconvenience, or unfairness to any individual on

Defendants counter that "[t]he evidence is to the contrary," and assert that Walter Reed has been in continuous possession of the 2012 DVD.  *See* Defs. Mot. at 16–17 (citing Third Bizzell Decl., ¶ 27 ("The Original 2012 DVD went from Judy Logeman to the Medical Records office, who then delivered it to [Judy Bizzell] . . . The WRNMMC FOIA Office retains the Original 2012 DVD in [Hammond's] FOIA file.")).

The Privacy Act, *see* 5 U.S.C. § 552a, governs the collection, maintenance, use, and dissemination of private individual information collected and stored by federal agencies.  The Act requires an agency to establish "appropriate administrative, technical, and physical safeguards" to ensure the security and confidentiality of the "private" information under their charge.  *See* 5 U.S.C. § 552a(e)(10).  When an agency fails to comply with any provision of the Act, an "individual may bring a civil action against the agency" if the failure "[had] an adverse effect on [that] individual."  *Id.* § (g)(1)(D); *see also id.* § (g)(4) (authorizing damages and reasonable attorney fees in suits brought under subsection (g)(1)(D)).[14]  But as the D.C. Circuit has explained, in order to recover damages under the Privacy Act, a plaintiff must demonstrate that an agency intentionally and willfully violated the Act's provisions.  *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987) (citing 5 U.S.C. § 552a(g)(4)).  This means that the

---

whom information is maintained."  *See* Am. Compl., ¶ 258; *see also* Pl. Mot. at 29 (citing 5 U.S.C. § 552a(e)(10); DOD 5400.11-R, DOD Privacy Program).

[14]     In his briefing, Hammond also gestures to a claim under 5 U.S.C. 552a(d)(1), which requires an agency, "upon request by any individual to gain access to his records," to permit the individual "to review the record and have a copy made."  *See* 5 U.S.C. 552a(d)(1); Pl. Mot. at 11 (describing § 552a(d)(1) and arguing for injunctive relief under § 552a(g)(1)(B), which applies only to violations of (d)(1)).  Hammond focuses on his requests for copies of the 2012 DVD and the label of the original DVD.  *See* Pl. Mot. at 30.  Defendants have submitted declarations that Hammond received access to both items when requested.  *See* Second Bizzell Decl., ¶ 26; Third Bizzell Decl., ¶¶ 26, 29.  To the extent Hammond challenges the adequacy of Walter Reed's searches or the records turned over to him, his arguments fall to the same deficiencies as his arguments under FOIA.  *See supra*; *see also Thompson v. DOJ, Crim. Div.*, 146 F. Supp. 3d 72, 82 (D.D.C. 2015) ("[T]he adequacy of the search for both FOIA and Privacy Act requests is analyzed under the same standard." (citation omitted)); *Williams v. Fanning*, 63 F. Supp. 3d 88, 94–95 (D.D.C. 2014) ("[I]t is well-established that 'the presumption of good faith' that accompanies agency affidavits submitted in the Privacy Act or FOIA context 'cannot be rebutted by purely speculative claims about the existence and discoverability of other documents.'" (citation omitted)).

government is not liable for every affirmative or negligent act that technically violates the Privacy Act. *Id.* "Instead, the violation must be so 'patently egregious and unlawful' that anyone undertaking the conduct should have known it 'unlawful.'" *Id.* (quoting *Wisdom v. HUD*, 713 F.2d 422, 425 (8th Cir. 1983), *cert. denied*, 465 U.S. 1021 (1984)).

Hammond has not met his burden here.  In his briefing, Hammond extensively details his communications with Walter Reed as to the location of his DVD between 2012 and 2017, *see* Pl. Mot. at 29–35, arguing that "[t]he factual record contains no concrete and definitive information in regards to the tracking and whereabouts" of the DVD and that "Defendants admit that on multiple occasions they could not locate the Original 2012 DVD." *Id.* at 34.  The Third Bizzell Declaration, however, contradicts these allegations and maintains that the DVD is safely kept in Hammond's FOIA file.  *See* Third Bizzell Decl., ¶ 27.  The declaration is entitled to a presumption of good faith, which is not rebutted by Hammond's speculation.  *See Williams*, 63 F. Supp. 3d at 94–95.  Moreover, even if Hammond were correct that the DVD was unaccounted for "on multiple occasions,"[15] such temporary lapses without more would not establish that Walter Reed "'flagrantly disregarded' the rights guaranteed under the Privacy Act." *Laningham*, 813 F.2d 1242 (quoting *Albright v. United States*, 732 F.2d 181, 189 (D.C. Cir. 1984)).  Violations of the Privacy Act occur where a plaintiff shows that an agency was warned "of recurring, systemic, and fundamental deficiencies in its information security" but "failed to establish proper safeguards." *See Am. Fed'n of Gov't Emps. v. Hawley*, 543 F. Supp. 2d 44, 52 (D.D.C. 2008).  Hammond's allegations fall far short of meeting that standard.  Finally, Hammond's Privacy Act claim is also insufficient because it fails to adequately allege that the

---

[15]    For example, Hammond asserts that in an administrative appeal to the Department of Navy Judge Advocate General ("DON JAG"), the "DON JAG represented that WRNMMC conducted a thorough search of the 'patients records section' but could not locate the Original 2012 DVD."  *See* Pl. Mot. at 31.

violation had "an adverse effect" on him, s*ee* 5 U.S.C. § 552a(g)(1)(D):  Hammond makes no attempt to show any particularized harm or prejudice from the agency's alleged temporary misplacement of the DVD.  *See* Am. Compl. ¶¶ 259–62.  Accordingly, Defendants are entitled to summary judgment as to Hammond's Privacy Act claim.

## CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Motion for Summary Judgment and will deny Plaintiff's Cross Motion for Summary Judgment.[16]  A separate Order will issue this day.

_____

Florence Y. Pan
United States District Judge

Date:   December 21, 2021

---

[16]     Hammond has also moved for summary judgment on his request for attorneys' fees and costs.  *See* Pl. Mot. at 35–37.  Section 552(a)(4)(E) of FOIA permits a court to "assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under [FOIA] in which the complainant has substantially prevailed."  *See* 5 U.S.C. § 552(a)(4)(E).  Both parties have agreed to defer consideration of this issue.  *See* Defs. Mot. at 13; Pl. Reply at 24.  It is the practice of this Court, where only attorneys' fees remain at issue in a FOIA case, to close the case administratively, pending notification from the parties regarding whether briefing on this remaining issue is necessary.